```
1  Leslie T. Gladstone, Esq.  (SBN 144615)
   Christin A. Batt, Esq.  (SBN 222584)
2  Derek A. Soinski, Esq. (SBN 293747)
   FINANCIAL LAW GROUP
3  401 Via Del Norte
   La Jolla, CA 92037
4  Telephone (858) 454-9887
5  Facsimile (858) 454-9596

6  Attorneys for Leslie T. Gladstone, Chapter 7 Trustee
```

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| In re: | Case No.: 20-02477-LA7 |
|---|---|
| GARDEN FRESH RESTAURANTS, LLC, | **DECLARATION OF LESLIE T. GLADSTONE IN SUPPORT OF TRUSTEE'S NOTICE OF INTENDED ACTION RE: APPROVAL OF STIPULATION RE: CARVE-OUT FROM SECURED CREDITORS AND PACA CREDITORS CLAIMS AND ALLOCATION OF PROCEEDS WITH RESPECT TO SALE OF PERSONAL PROPERTY** |
| Debtor. | Honorable Louise DeCarl Adler |

I, LESLIE T. GLADSTONE, declare:

    1.    I am the chapter 7 trustee for the bankruptcy estate of Garden Fresh Restaurants, LLC (the "**Debtor**").  All the information contained herein is within my personal knowledge, except for those matters alleged on information and belief and as to those matters I believe them to be true.  If called as a witness, I could competently testify thereto.

2. I offer this Declaration in support of my Notice of Intended Action, seeking an order approving a compromise with FreshPoint Atlanta, Inc., FreshPoint Central California, Inc., FreshPoint Central Florida, Inc., FreshPoint Denver, Inc., FreshPoint Southern California, Inc., FreshPoint South Florida, Inc., Premier Produce of South Florida, LLC, Willie Itule Produce, Inc., Victoria Pacific Trading Corp., and any other similarly situated bonafide PACA Trust Creditors (collectively, the "**PACA Creditors**") and Cerberus Business Finance, LLC, as collateral agent and administrative agent (the "**Agent**") for the Lenders under, and as defined in, that certain Financing Agreement, dated as of February 1, 2017 (as amended), to which GFRC Holdings LLC, Garden Fresh Restaurants LLC and GFRC Promotions LLC are party (the Agent and the Lenders, collectively, the "**Secured Creditors**", and together with the PACA Creditors, collectively, the "**Claimants**").  My comments set forth in this Declaration are for purposes of explaining the benefits of the proposed compromise.  They do not constitute admissions by me in this or any other proceeding, and I reserve all rights available to the estate if the compromise is not approved.

3. A true and correct copy of the Stipulation re: Carve-Out From Secured Creditors and PACA Creditors Claims and Allocation of Proceeds With Respect to Sale of Personal Property (the "**Stipulation**") is attached as <u>Exhibit 1</u> to my Notice of Intended Action.

4. The PACA Creditors assert that some or all of the Personal Property is subject to PACA trusts under the trust provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq.*, ("**PACA**") and is not part of the Estate pursuant to 11 U.S.C. Section 541(d).  The PACA Creditors assert that that they have a super-priority interest in the Personal Property and/or the proceeds from the sale of the Personal Property and that additional produce suppliers holding valid PACA trust claims may exist, but that the Debtor's failure to file schedules has made it impossible for me or the PACA Creditors to determine all known or anticipated entities holding valid PACA trust claims against the Debtor.

5. The Secured Creditors assert that they have security interests in all of the Debtor's property, including all of the Personal Property, pursuant to security interests which they assert were properly perfected.

6. In order to allow me to perform my duties during the coronavirus pandemic, and to maximize the value of the assets in the Debtor's possession for the benefit of the Claimants, the Estate, and all of the Debtor's creditors, I and the Claimants have agreed that the I may proceed to market and sell the Personal Property subject to Court approval, on agreed upon terms. I and the Claimants acknowledge that the Stipulation is a good faith compromise of disputed legal positons.

7. The Stipulation was intensely negotiated after extensive analysis by the Parties. I have worked diligently to maximize the value of the property of the Estate, which is especially difficult due to the perishable nature of a great deal of Estate property, the many restrictions in place due to the coronavirus pandemic, the Debtor's failure to file schedules along with its petition, the volume of the Debtor's creditors, rapidly increasing administrative expenses, the legal complexities of PACA, and the competing interests and positions of the Claimants.

8. The material terms of the Stipulation are that the Claimants will accept payment on their claims as follows:

    (a) With respect to the Tier 1 Property, the proceeds from any Personal Property I actually sell will be distributed as follows:

        (i) I will first pay all costs of sale of the Tier 1 Property, including but not limited to auctioneer fees and expenses, any administrative rent and administrative utility expenses, my commission earned on the Tier 1 Property, attorneys' fees the Estate incurs in procuring landlord approval, court approval and/or otherwise administering or liquidating the Tier 1 Property, any applicable sales tax belonging to the Tier 1 Property, and/or any allowed personal property tax liens that have attached to the Tier 1 Property and which are found to be senior to the PACA Creditors and/or the Secured Creditors;

        (ii) The residue of proceeds derived from the liquidation of the Tier 1 Property will be split 30% to the Estate and 70% to the Claimants. I will maintain custody of the sums due to the Claimants, in a segregated account, until either (1) agreement between the Secured

Creditors and the PACA Creditors as to division; or (2) resolution of priority issues as determined by a court of competent jurisdiction.

(b) With respect to any Personal Property I actually sell in the Kitchens and the Corporate Office, the Parties agree to distribute the proceeds as follows:

   (i) I will first pay all costs of sale of the Personal Property sold from the Kitchens/Corporate Office, including but not limited to auctioneer fees and expenses, any administrative rent and utility expenses, my commission earned on Personal Property sold from Kitchens/Corporate Office, attorneys' fees the Estate incurs in procuring landlord approval, court approval and/or otherwise administering or liquidating these assets, any applicable sales tax that needs to be paid by the Estate in connection with the sale of these assets, and/or any allowed personal property tax liens that have attached to these assets and which are found to be senior to the PACA Creditors and/or the Secured Creditors;

   (ii) The residue of proceeds derived from the liquidation of Personal Property in the Kitchens/Corporate Office will be split 30% to the Estate and 70% to the Claimants. I will maintain custody of the sums due to the Claimants, in a segregated account, until either (1) agreement between the Secured Creditors and the PACA Creditors as to division; or (2) resolution of priority issues as determined by a court of competent jurisdiction.

(c) The Parties further agree that the Claimants will waive any rights to share in any proceeds from the sale of Personal Property located in the Restaurants such that 100% of these net proceeds will inure to the benefit of the Estate.

(d) The Parties further agree that the Claimants will retain the right to any deficiency claim and to share in any distribution to general unsecured

creditors on account of such deficiency claim, or pursuant to any other rights which pre-exist the date the Stipulation.

(e) In exchange for the consideration given by the Secured Creditors and PACA Creditors, I will waive any and all rights to surcharge costs or expenses of administration which have or may be incurred in the Debtor's bankruptcy case against the Secured Creditors and PACA Creditors, their respective claims or interests, and/or their collateral pursuant to Section 506(c) of the Bankruptcy Code.

(f) The Stipulation is binding upon, and inures to the benefit of, all of Debtor's produce suppliers holding PACA trust claims.

9. Due to the likelihood of prolonged and costly litigation of intricate factual analyses relating to the Parties disputed legal positions, coupled with the circumstances necessitating immediate liquidation, I believe that the Stipulation is in the best interest of the Estate and should be approved. The Stipulation will bring substantial monies into the Estate that would otherwise be lost and in my business judgment it should be approved.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2020 at La Jolla, California.

   /s/ Leslie T. Gladstone
Leslie T. Gladstone