1  Leslie T. Gladstone, Esq.  (SBN 144615)
   Christin A. Batt, Esq.  (SBN 222584)
2  Andrew B. Levin, Esq. (SBN 290209)
   FINANCIAL LAW GROUP
3  5656 La Jolla Blvd.
   La Jolla, CA 92037
4  Telephone: (858) 454-9887
   Facsimile: (858) 454-9596
5  E-mail:  AndrewL@flgsd.com
6
7  Attorneys for Leslie T. Gladstone, Chapter 7 Trustee

8              UNITED STATES BANKRUPTCY COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10  In re: | Case No.:  20-02477-LT7 |
| 11  GARDEN FRESH RESTAURANTS LLC, | **TRUSTEE'S MOTION TO APPROVE AUCTION PROCEDURES AND FOR AUTHORITY TO SELL ESTATE'S INTEREST IN SETTLEMENT PROCEEDS OF CLASS ACTION LAWSUIT PURSUANT TO 11 U.S.C. SECTION 363, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 12 | |
| 13          Debtor. | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | Date:          January 10, 2024 |
| 19 | Time:          10:00 a.m. |
| 20 | Dept:          Three (3) Honorable Laura S. Taylor |

21

22

23

24

25

26

27

28

*FINANCIAL LAW GROUP*
*5656 La Jolla Boulevard*
*La Jolla, California 92037*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ......................................................................................1

II.  STATEMENT OF FACTS  ....................................................................3

    A.  General Background and History of the Business  .........................3

    B.  Debtor's Acquisition of Assets from the
        2016 GFRC Bankruptcy Estate  ...................................................3

    C.  The Visa/Mastercard Class Action, Proposed
        Settlement, and Appeal ...................................................................7

    D.  Sale of the Settlement Claims Free and Clear
        of Liens, Claims, and Interests  ....................................................9

    E.  Marketing Efforts  .........................................................................9

    F.  Proposed Sale Terms......................................................................10

    G.  Proposed Auction Procedures .......................................................11

III.  MEMORANDUM OF POINTS AND AUTHORITIES  .........................13

    A.  The Settlement Claims Are Property of the
        Estate that May Be Sold.  ..............................................................13

    B.  The Auction Procedures Are Appropriate and
        in the Best Interests of the Estate  .................................................14

    C.  Sale of the Settlement Claims Free and Clear of Liens
        and Interests is Permitted Under Section 63(f
        of the Bankruptcy Code .................................................................14

    D.  Accurate and Reasonable Notice of the Sale and Auction
        Opportunity Has Been Provided....................................................14

    E.  Buyer Is a Good Faith Purchaser ..................................................15

    F.  The Break-Up Fee Is in the Best Interests of the Estate ...............16

    G.  The Sale Is in the Best Interests of the Estate...............................16

IV.  CONCLUSION  .......................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                                              Page

*Cmty. Thrift & Loan v. Suchy (In re Suchy)*,
    786 F.2d 900, 901-02 (9th Cir. 1985) ..........................................................15

*In re Garden Fresh Restaurant Intermediate Holdings, LLC,*
    Case No. 16-12174 (CSS)................................................................................3

*In re Payment Card Interchange Fee and Merchant Discount*
    *Antitrust Litigation*, MDL 1720 (MKB) (JO) .................................................7

*Inst. Creditors v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*,
    780 F.2d 1223 (5th Cir. 1986) ......................................................................13

*Mann v. Alexander Dawson Inc. (In re Mann)*, 907 F.2d 923 (9th Cir. 1990) .......15

*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*
    *(In re Integrated Res., Inc.)*, 147 B.R. 650 (S.D.N.Y. 1992).......................16

*Onouli-Kona Land Co. v. Estate of Richards*
    *(In re Onouli-Kona Land Co.)*, 846 F.2d 1170 (9th Cir. 1988)...................15

*Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14 (B.A.P. 9th Cir. 1988) ..........13

**Federal Statutes**

11 U.S.C. § 36............................................................................................13

11 U.S.C. § 63............................................................................................14

11 U.S.C. § 101..........................................................................................2

11 U.S.C. § 363 ..............................................................2, 13, 14, 15, 16, 17

11 U.S.C. § 503..................................................................................12, 13

11 U.S.C. § 704 .........................................................................................13

**Federal Rules**

Fed. R. Bankr. P. 9017 ..............................................................................1

Fed. R. Evid. 201 .......................................................................................1

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

Leslie T. Gladstone, Chapter 7 Trustee (the "**Trustee**") for the bankruptcy estate (the "**Estate**") of debtor Garden Fresh Restaurants LLC ("**Garden Fresh**"), submits the following motion (the "**Motion**") for an order approving auction procedures and authorizing the sale of the Estate's interest in claims to settlement proceeds in a class action lawsuit free and clear of liens, claims, and interests.  This Motion is based on the Memorandum of Points and Authorities cited herein, the Notice of Hearing and Motion, the Declaration of Leslie T. Gladstone ("**Gladstone Declaration**") and the Request for Judicial Notice (the "**RFJN**"), each filed concurrently herewith, and all pleadings and court documents on file in this case.[1]

In the event that no overbidder satisfies the prequalification requirements described below and no opposition to the Motion is timely filed, the Trustee requests that this Motion be granted and this hearing be removed from the Court's calendar, and the Trustee will submit an Order approving the sale without further hearing.[2]

# I.

## INTRODUCTION

The Trustee seeks to sell certain assets of the Estate, namely claims held by the Estate as the result of a recent settlement of a class action lawsuit, upheld on appeal, that would pay settlement funds based on claims related to Visa and Mastercard charges incurred from 2004 to 2019 (the "**Settlement Claims**").  Garden Fresh owned and operated 95 to 100 restaurants that accepted Visa and Mastercard credit or debit cards and holds claims that accrued during this time period.  Although Garden Fresh was formed in 2017, the Estate also holds claims dating back to 2004.  As shown below, Garden Fresh purchased assets from the bankruptcy

---

[1]    The Trustee respectfully requests, pursuant to Rule 201 of the Federal Rules of Evidence, made applicable herein by Rule 9017 of the Federal Rules of Bankruptcy Procedure, that the Court take judicial notice of the case docket for the above-captioned case and each of the pleadings and other documents on file in the case, including those attached to the Gladstone Declaration.

[2] Questions regarding whether the hearing will be held should be directed to the Trustee's counsel (Andrew Levin at 858-294-0219 or AndrewL@flgsd.com) after the Prequalification Deadline (Noon on January 5, 2024).

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California  92037

estate of Garden Fresh Restaurant Corp., including the right to Settlement Claims that accrued prior to 2017.

The Trustee has been contacted by persons interested in purchasing the Estate's rights to the Settlement Claims, and multiple potential buyers have returned Nondisclosure Agreements and have reviewed confidential documents regarding the Settlement Claims. The Trustee has received a stalking horse bid for the Settlement Claims, subject to overbid.

In this Motion, the Trustee requests Court approval of certain auction procedures, including the requirement that any overbidder prequalify to bid at an auction.  If an overbidder prequalifies, an auction will be held at the hearing on this Motion to determine the successful bidder and a back-up bidder.  Under those circumstances, the Trustee requests authority to sell the Settlement Claims to the successful bidder and a back-up bidder on the terms described below.

In the event that no overbidder prequalifies, no auction will be held and the Trustee requests authority to sell the Settlement Claims to the identified buyer on the terms described below.

This Motion is brought pursuant to section 363 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) on the grounds that the Settlement Claims hold value to the Estate; the Trustee has marketed the sale of the Settlement Claims since July 2023; the Trustee expects a robust sale; the terms of the sale and the auction procedures constitute a proper exercise of the Trustee's business judgment; and the sale is in the best interests of the Estate.

**II.**

**STATEMENT OF FACTS**

**A.    General Background and History of the Business**

This bankruptcy case was commenced by Garden Fresh on May 14, 2020 (the "**Petition Date**"), under chapter 7 of the U.S. Bankruptcy Code.  On or about the same date, the Trustee was appointed chapter 7 trustee of Garden Fresh's Estate.

Formed in 2016, Garden Fresh operated a business consisting of buffet-style chain restaurants under the brand names Souplantation, Sweet Tomatoes, Souplantation Field

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California  92037

1    Kitchen, and Souplantation Express, which it acquired from the bankruptcy estate of Garden

2    Fresh Restaurant Corp. ("**GFRC**"), as further described below.  Prior to the Petition Date,

3    Garden Fresh operated between 95 and 100 restaurants across the United States.

4        The business that Garden Fresh acquired from the bankruptcy estate of GFRC started

5    in San Diego when its founders opened their first restaurant in El Cajon and a second in Point

6    Loma.  Thereafter, the founders formed GFRC in 1983.  This entity operated for over 30

7    years, expanding the Souplantation and Sweet Tomatoes brands across the United States

8    West and Southwest.

9    **B.    Debtor's Acquisition of Assets from the 2016 GFRC Bankruptcy Estate.**

10       On or about October 3, 2016, GFRC and several affiliates filed bankruptcy under

11   chapter 11 in the U.S. Bankruptcy Court for the District of Delaware (the "**Delaware**

12   **Bankruptcy Court**").  The bankruptcy cases were jointly administered under *In re Garden*

13   *Fresh Restaurant Intermediate Holdings, LLC, et al.*, Case No. 16-12174 (CSS) (the "**GFRC**

14   **Bankruptcy**").[3]

15       On January 9, 2017, the Delaware Bankruptcy Court entered an order (the "**2017 Sale**

16   **Order**") approving, among other things, the sale (the "**GFRC Sale**") of certain assets (the

17   "**GFRC Assets**") in the GFRC Bankruptcy to purchasers GFRC Holdings LLC ("**GFRC**

18   **Holdings**"), Garden Fresh, and GFRC Promotions LLC ("**GFRC Promotions**" and, together

19   with GFRC Holdings and Garden Fresh, the "**2017 Purchasers**")[4] pursuant to that certain

20   Asset Purchase Agreement (the "**2016 APA**"), dated as of November 14, 2016, by and among

21   GFRC Holdings, as purchaser, and Garden Fresh Restaurant Intermediate Holding, LLC,

22

23   [3] The debtors in the GFRC Bankruptcy, along with the last four digits of each debtor's federal
24   tax identification number, were Garden Fresh Restaurant Intermediate Holding, LLC (7513);
     Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); GFRC (8786); and Garden
25   Fresh Promotions, LLC (1376).  The location of the debtors' corporate headquarters was
     15822A Bernardo Center Drive, San Diego, CA  92127.
26   [4]    GFRC Holdings was formerly known as GFRC Acquisition LLC at the time of the 2016
     APA. The 2017 Sale Order defines "Purchaser" as "GFRC Holdings LLC (formerly known
27   as GFRC Acquisitions LLC) (and together with its direct and indirect subsidiaries, Garden
     Fresh Restaurants LLC [*i.e.*, the debtor in this case] and GFRC Promotions LLC, the
28   'Purchaser')." RFJN, Exhibit 1 at pp. 1-2.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California  92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

GFRC, Garden Fresh Holdings, Inc., GF Holdings, Inc., and Garden Fresh Promotions, LLC, as sellers.  *Id.*  A copy of the 2017 Sale Order is attached as Exhibit 1 to the RFJN.  For the Court's convenience, the 2016 APA, which is an exhibit to the 2017 Sale Order, is also attached as Exhibit 2 to the RFJN.

The 2016 APA names the purchaser under the 2016 APA as "GFRC Acquisitions LLC, a Delaware limited liability company (and together with its designee(s), successors and/or assigns, as provided under Section 11.8.)" RFJN, Exhibit 2 at opening paragraph.  In turn, Section 11.8 of the 2016 APA provides that GFRC Holdings "may assign, delegate or transfer, in whole or in part this Agreement and any of its rights, obligations and/or interests hereunder without the consent of the Sellers, to one or more of its Affiliates."  *Id.* at § 11.8.[5]

The assets purchased by the 2017 Purchasers pursuant to the 2016 APA (the "**Purchased Assets**") included all rights, claims, settlement proceeds, and causes of action relating to the Purchased Assets, which include all rights, title, and interest to all assets related to or held in connection with operating the "Business."  Specifically, Section 1.1 of the 2016 APA provides the following description of the Purchased Assets:

> all of such Seller's right, title and interest in, to and under, free and clear of all Encumbrances … all of the assets, properties, rights and interests of any nature, tangible or intangible, real or personal, wherever located, of such Seller related to or used, or held for use, in connection with the operation of the Business, now existing or hereafter acquired on or prior to the Closing Date, whether or not reflected on the books or financial statements of such Seller, as the same shall exist on the Closing Date, but in all cases excluding the Excluded Assets (…, collectively, the "Purchased Assets"), including without

---

[5] The 2016 APA defines "Affiliate" as "with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term 'control' (including the terms 'controlled by' and 'under common control with') means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by Contract or otherwise." RFJN, Exhibit 2 at § 10.1(b), page 53.  Pursuant to this definition, Garden Fresh, which is wholly owned by GFRC Holdings, is an Affiliate of GFRC Holdings.  (ECF No. 168, SOFA ¶ 28 at 4334 of 4375)

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

limitation, the following assets, properties, rights and interests of such Seller:

…

(j)    (i) all <u>rights</u>, <u>claims</u>, credits, <u>settlement proceeds</u>, <u>causes of action</u> or rights of set off against third parties <u>relating to the Purchased Assets</u> … including, without limitation, all rights under vendors', manufacturers' and contractors' warranties, indemnities and guarantees ….

RFJN, <u>Exhibit 2</u> at § 1.1, pages 2–3 (emphasis added).

Further, "Business" is defined as "any and all business activities of any kind that are conducted by the Sellers as of the Execution Date or at any time through (and including) the Closing Date, including, among other things, operating casual dining restaurants in several states and all operations incidental thereto." *Id.* at § 10.1(l).

Finally, Section 1.2 of the 2016 APA provides a list of "Excluded Assets," which list does not include any asset that would apply to the claims in the Visa and Mastercard litigation. *Id*. at § 1.2.[6]

Accordingly, the Purchased Assets purchased pursuant to the 2016 APA included any and all claims that GFRC could have asserted in the Class Action, as defined below (the "**GFRC Claims**").

As noted above, Garden Fresh (the debtor in the present case) is included as a Purchaser under the 2016 APA pursuant to the 2017 Sale Order. RFJN, <u>Exhibit 1</u>, at pp.1-2. Further, the 2017 Sale Order explicitly holds that GFRC Holdings "is hereby authorized in connection with the consummation of the Sale to transfer or direct the transfer of any or all of the Purchased Assets and the Assumed Contracts (or any rights to acquire the Purchased Assets and the Assumed Contracts) to its direct and indirect subsidiaries Garden Fresh Restaurants LLC and GFRC Promotions LLC in a manner as it, in its sole and absolute discretion, deems appropriate and to assign, sublease, sub license, transfer or otherwise

---

[6] While the list of "Excluded Assets" purports to include "those assets listed in Schedule 1.2(m) to the APA", no Schedule 1.2(m) was filed in the GFRC Bankruptcy and, therefore, neither Schedule 1.2(m) nor anything listed on it, are a part of the 2016 APA as approved by the 2017 Sale Order. RFJN, Ex. 1, 2.

1  dispose of any of the Purchased Assets or the rights under any Assumed Contract to its direct

2  and indirect subsidiaries Garden Fresh Restaurants LLC and GFRC Promotions LLC with all

3  of the rights and protections accorded under this Sale Order and the Asset Purchase

4  Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by

5  the Purchaser to effectuate any of the foregoing."  *Id.* at ¶ 22.

6       GFRC Holdings is a holding company set up for potential add-on acquisitions, exits

7  and financings.  Garden Fresh, the debtor in this Case, is the operating company that

8  operated, among other things, the 97 restaurants.  Garden Fresh is wholly owned by GRFC

9  Holdings.  GFRC Promotions LLC is a company wholly owned by Garden Fresh that retains

10  all gift card liabilities separate from the operating company.  All three of these entities

11  initiated bankruptcy proceedings in this Court.[7]

12       Neither GFRC Holdings nor GFRC Promotions LLC operated the restaurant locations

13  or has any interest in the Settlement Claims related to the Visa and Mastercard charges from

14  operation of those 97 restaurants that are the subject of the Class Action, as defined below.

15  Further, neither GFRC Holdings nor GFRC Promotions LLC identified the Settlement

16  Claims as assets in their respective bankruptcies.  See RFJN, <u>Exhibits 3, 4</u>. (respective A/B

17  schedules)

18       Only the debtor Garden Fresh retained the Purchased Assets and operated the

19  restaurant locations.  Accordingly, only Garden Fresh generated the Visa and Mastercard

20  charges that are the subject of the Class Action.

21  **C.**    **The Visa/Mastercard Class Action, Proposed Settlement, and Appeal**

22       A class action lawsuit was filed in the Unites States District Court for the Eastern

23  District of New York (the "**EDNY**") captioned *In re Payment Card Interchange Fee and*

24  *Merchant Discount Antitrust Litigation*, 05-md-1720-MKB-JAM (the "**Class Action**"),

25

26  _____

27  [7]  GFRC Holdings was debtor in Case No. 20-02480-LA7, which case was closed in May 2022.  GFRC Promotions LLC was debtor in Case No. 20-02481-CL7, which case was closed in December 2020 as a no-asset case.  The chapter 7 trustee in both cases was Leonard

28  J. Ackerman.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California  92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1  alleging that merchants paid excessive fees to accept Visa and Mastercard credit or debit

2  cards due to the fact that Visa and Mastercard, individually, and together with their respective

3  member banks, allegedly violated antitrust laws.  Class members include merchants that

4  accepted Visa or Mastercard credit or debit card payments between January 1, 2004, and

5  January 25, 2019.  Garden Fresh, through operation of its restaurants during this 15-year

6  period and the purchase of the GFRC Claims, is a member of the class.  A true and correct

7  copy of the Notice of Class Action Settlement (the "**Settlement Notice**") as authorized by the

8  EDNY, regarding a proposed settlement of the Class Action, is attached to the RFJN as

9  Exhibit 5.

10  On December 16, 2019, the EDNY entered an order (the "**Settlement Order**")

11  granting final approval of the proposed settlement which, among other things, creates a

12  settlement fund (the "**Settlement Fund**") in the range of approximately $6.24 to $5.54 billion

13  (the "**Settlement**").  A true and correct copy of the Settlement Order is attached to the RFJN

14  at Exhibit 6.  On January 3, 2020, an appeal of the Settlement Order was filed with the

15  EDNY.  On March 15, 2023, the Court of Appeals for the Second Circuit (the "**Second**

16  **Circuit**") affirmed the Settlement Order, with one exception not relevant here.[8]

17  On May 10, 2023, the Second Circuit denied certain objectors' request for panel

18  rehearing or, in the alternative, rehearing *en banc*.  As of August 1, 2023, the time for all

19  appeals has passed.

20  Importantly, no claim filing deadline has yet been set.

21  More information can be found at the Official Court-Authorized Settlement Website

22  at https://www.paymentcardsettlement.com/en.

23  The Trustee is informed that the Estate holds the Settlement Claims in the Class

24  Action.  These Settlement Claims are based on Garen Fresh's ownership and operation of

25  restaurants that accepted Visa or Mastercard credit or debit cards between January 1, 2004,

26

27  [8] The exception is that the EDNY is directed to reduce the service award to class representatives to the

28  extent that its size was increased by time spent in lobbying efforts that would not increase the recovery of damages.

IN RE GARDEN FRESH RESTAURANTS LLC          7          MOTION TO  APPROVE AUCTION PROCEDURES AND
CASE NO. 20-02477-LT7                                          AUTHORIZE SALE OF CLASS ACTION CLAIMS

and January 25, 2019, as well as the purchase of the GFRC Claims.  As set forth in the Settlement Notice, the amount of Garden Fresh's Settlement Claims will be based on the actual or estimated interchange fees attributable to the Visa or Mastercard credit or debit card transactions between Garden Fresh (or GFRC) and its customers between January 1, 2004, and January 25, 2019.[9]  RFJN, Exhibit 5 at 7.

As further set forth in the Settlement Notice, the value of Garden Fresh's Settlement Claims, *i.e.*, the amount to which the holder of such Settlement Claims will be entitled, will depend on the total value of all valid claims filed in the Class Action, deductions made from the Settlement Fund based on potential claimants opting out of the Settlement, and the costs of administering the Settlement Fund.  *Id.*

The Trustee does not possess records dating back to 2004 to determine the amount of the Settlement Claims.  As set forth in the Settlement Notice, the class administrator in the Class Action (the "**Class Administrator**") will have data to determine the amount of each claim asserted in the Class Action, including in the subject Garden Fresh Settlement Claims. *Id.* at 8.  Regardless, the Trustee does have some relevant information regarding the scope of the Settlement Claims that has been made available to potential bidders, namely (i) estimates of Garden Fresh's total sales for 2016, 2017, and 2018 as well as the total number of transactions with Visa cards and Mastercard cards for 2018 and (ii) Garden Fresh's merchant account statements from Chase Paymentech for the period December 2007 to January 2019, which provide detailed information regarding total daily transactions with Visa, Mastercard, and other cards for each of Garden Fresh's locations.

The Trustee is informed that the Settlement Claims have value for the Estate.

**D.**     **Sale of the Settlement Claims Free and Clear of Liens, Claims, and Interests**

As of the Petition Date, Cerberus Business Finance LLC ("**Cerberus**"), in its capacity as collateral agent and administrative agent for the Lenders (together with Cerberus, the

---

[9] As noted above, Garden Fresh's Settlement Claims also include the GFRC Claims dating from 2004 to 2016 that GFRC could have asserted in the Class Action that Garden Fresh acquired from the GFRC Bankruptcy.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California  92037

1   "**Secured Creditors**") under, and as defined in, that certain Financing Agreement, dated as

2   of February 1, 2017, to which Garden Fresh and GFRC Promotions LLC, as co-borrowers,

3   and GFRC Holdings, LLC, as guarantor, are parties (the "**Financing Agreement**"), asserts a

4   security interest in the Settlement Claims pursuant to the terms of the Financing Agreement.

5          On July 20, 2020, the Trustee, Cerberus, and various third parties entered into a

6   stipulation (the "**Carve-Out Stipulation**"), approved by the Court on August 20, 2020 (ECF

7   No. 507), pursuant to which Cerberus agreed to allow the Trustee to market and sell, among

8   other things, the Settlement Claims, with the net proceeds of any such sale split 30% to the

9   Estate (as a carve-out from the Secured Creditors' claims) and 70% to the Secured Creditors.

10  **E.       Marketing Efforts**

11         The Settlement Claims are an unusual asset for which standard marketing efforts

12  would be ineffective.  The Trustee, however, has a broad network of buyers interested in

13  purchasing unusual assets from bankruptcy estates. On July 6, 2023, the Trustee's counsel

14  contacted by email 20 third parties that had previously expressed an interest in purchasing the

15  Settlement Claim and/or are known potential purchasers in the industry, providing detailed

16  information regarding the Settlement Claims and the Trustee's intended sale of the

17  Settlement Claims.  Thereafter, the Trustee expanded the scope of her marketing efforts to

18  include additional known potential purchasers in the industry.  On September 25, 2023, the

19  Trustee's counsel sent an email to the members of the National Association of Bankruptcy

20  Trustees announcing the Trustee's efforts to sell the Settlement Claims.  In addition, on

21  September 27, 2023, the Trustee's counsel contacted an additional 89 third parties by email

22  to provide detailed information regarding the Settlement Claims and the Trustee's intended

23  sale of the Settlement Claims.  As a result of these marketing efforts (collectively, the

24  "**Marketing Efforts**"), the Trustee received eleven (11) signed nondisclosure agreements

25  from potential purchasers seeking additional information regarding the Settlement Claims

26  and three (3) offers to purchase the Settlement Claims.  The Trustee determined that the

27  highest and best offer for the Settlement Claims was in the amount of $50,000.00, received

28  by Clearwater Recovery Partners LLP (the "**Buyer**").  A copy of the Asset Purchase

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California  92037

1   Agreement (the "**Purchase Agreement**") with Buyer is attached to the Gladstone Declaration

2   as <u>Exhibit A</u> and incorporated herein.

3       The Trustee is unaware of any other higher and better firm offer to purchase the

4   Settlement Claims.

5       Neither Buyer nor any other party that submitted a nondisclosure agreement is an

6   insider of Garden Fresh.  This proposed sale has been negotiated at arm's length.

7       The proposed sale of the Settlement Claims will bring into the Estate about

8   $15,000.00 after payment of liens.  As such, the Purchase Agreement, or any overbid, will

9   result in a significant benefit to the Estate.

10  **F.      Sale Transaction, Subject to Overbid.**

11      Below are the suggested terms of the sale transaction to Buyer.

12      (1)     Purchase Price:  $50,000.00 payable as follows: $5,000.00 due at execution of

13  the Purchase Agreement, and the remaining balance of the Purchase Price due at Closing.

14      (2)     "As-Is, Where-Is":  The sale is as-is, where-is, no representations, no

15  warranties.

16      (3)     Closing Date:  As soon as practicable but not later than five (5) business days

17  following the date of which the order approving the Purchase Agreement and authorizing the

18  Trustee to consummate the sale is entered, without a stay of such order being entered, or as

19  soon as is reasonably possible thereafter.

20      (4)     Sale Free-and-Clear:  As authorized by Section 363(f) of the Bankruptcy

21  Code, the Settlement Claims will be sold free and clear of any and all monetary liens, claims,

22  encumbrances, or other interests ("**Liens**").  The Trustee is aware of the following interests,

23  liens, and encumbrances on the Property:

24          (a)     Cerberus:  approximately $44,741,947.24.

25  As set forth above, pursuant to the Carve-Out Stipulation Cerberus agreed to allow the

26  Trustee to market and sell, among other things, the Settlement Claims, with the net proceeds

27  of any such sale split 30% to the Estate (as a carve-out from the Secured Creditors' claims)

28

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

IN RE GARDEN FRESH RESTAURANTS LLC         10         MOTION TO  APPROVE AUCTION PROCEDURES AND
CASE NO. 20-02477-LT7                                         AUTHORIZE SALE OF CLASS ACTION CLAIMS

and 70% to the Secured Creditors.  In the event the sale is not approved or not consummated, all existing Liens will remain unaffected.

(5)    Buyer Breach:  If Buyer fails to close, Buyer will forfeit its deposit as liquidated damages and the Trustee will have the right to seek any and all other remedies and damages from Buyer.

(6)    Overbid Terms:  The Trustee seeks approval of the sale of the Settlement Claims subject to the Proposed Auction Procedures described in the section below.

(7)    Conditions to Close:

(a)    A Court order approving the sale of the Settlement Claims.

(b)    Payment in full of the Purchase Price to the Trustee.

(c)    Timely performance of each obligation, covenant, contingency, and condition under the APA.

The Purchase Agreement has been negotiated at arm's length.

The net proceeds from this sale are estimated to result in about $15,000.00 to the Estate.  The Trustee believes that the sale is in the best interest of the Estate and in her business judgment should be approved.

## G.    **Proposed Auction Procedures**

At the hearing on this Motion (the "**Hearing**"), if a qualified overbidder is present and interested in bidding, the Trustee will hold an auction to determine the Buyer.  The Trustee requests approval of the following suggested terms and proposed auction procedures.

(1)    Initial Overbid:  $60,000.00.

(2)    Subsequent Incremental Bids:  Minimum $5,000.00.

(3)    Deposit to Bid:  $5,000.00.

(4)    Prequalification Deadline:  **January 5, 2024**, at **Noon (PDT)**.

(5)    The auction will continue until the Court determines the highest and best bid (the "**Successful Bid**" from the "**Successful Bidder**") and the second-highest bid (the "**Back-Up Bid**" from the "**Back-Up Bidder**").  The Successful Bid will be irrevocable.  The Back-Up Bid will be irrevocable until the later of (i) two days after the order approving the

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1   Successful Bid becomes final and (ii) the closing of the sale to the Successful Bidder.  Once

2   the Back-Up Bid is no longer irrevocable, the Trustee will promptly refund the Back-Up

3   Bidder's deposit.

4   　　　　(6)　　All potential overbidders will be required to attend the Hearing (in person,

5   telephonically, or any other medium that the Court requires).

6   　　　　(7)　　Prequalification to Overbid:  In order to be allowed to overbid, a party must

7   present each of the following to the Trustee, on or before the Prequalification Deadline

8   **(January 5, 2024)** set forth above:

9   　　　　　　(a)　　Good funds (i.e., cashier's check or wire transfer) in the amount of

10   $5,000.00, payable to Estate of Garden Fresh Restaurants LLC, Leslie T. Gladstone,

11   Trustee, as a deposit, nonrefundable to the Successful Bidder and Back-Up Bidder,

12   except as provided in subparagraph (5) above.  These funds will be deposited into the

13   Estate's account and will be promptly refunded to unsuccessful overbidders following

14   the conclusion of the Hearing.  The deposit of the Successful Bidder shall be applied

15   to the final purchase price ordered by the Court.

16   　　　　　　(b)　　Evidence, satisfactory to the Trustee, that the overbidder has the

17   financial wherewithal to close the transaction.  Such evidence must include, at a

18   minimum, financial statements of the overbidder or party responsible for the

19   overbidder's obligations, certified under penalty of perjury as true and correct.

20   　　　　(8)　　The Successful Bidder will be required to execute, at the Hearing, an overbid

21   agreement.  If the Hearing is conducted telephonically, the Successful Bidder will be required

22   to execute and deliver the overbid agreement to the Trustee within 24 hours after the Hearing.

23   This overbid agreement will be similar to the Purchase Agreement and is not negotiable.

24   Interested parties may contact the Trustee to obtain a copy of the overbid agreement.

25   　　　　(9)　　In the event of a successful overbid by a party other than Buyer or Buyer's

26   affiliate or assignee, Buyer may receive, subject to Court approval, a break-up fee in the

27   amount of $5,000.00 (the "**Break-Up Fee**"), which shall be classified as an Administrative

28   Expense under Section 503(b)(1)(A) of the Bankruptcy Code; provided, however, that in the

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California  92037

1  event of Buyer's default under the Purchase Agreement, the Break-Up Fee shall not be paid

2  to Buyer.  The Break-Up Fee is intended as reimbursement for actual costs incurred by Buyer

3  in its investigation of the Settlement Claims.  According to the Trustee's suggested overbid

4  terms, the Break-Up Fee shall only be paid in the event of a consummated sale of the

5  Settlement Claims at $60,000.00 or higher—at least $10,000.00 above Buyer's Purchase

6  Price—to a party other than Buyer or Buyer's affiliate or assignee.

7       (10)    Back-Up Bid:  If, following entry of the order authorizing this sale, the

8  Successful Bidder fails to consummate the sale because of a breach or failure to perform on

9  the part of the Successful Bidder, the Back-Up Bid will be deemed to be the new Successful

10  Bid and the Trustee will be authorized, but not required, to consummate the sale with the

11  Back-Up Bidder without further order of the Court.  In the event of a breach or failure to

12  perform by the Successful Bidder, the Successful Bidder will forfeit its deposit to the Estate

13  and the Trustee will have the right to seek any and all other remedies and damages from the

14  Successful Bidder.

15  **H.    Status of Case and Claims**

16       The Trustee has many claim objections pending.  The claim objections are a small

17  part of a large estate administration that is not yet completed.  At this time, the Trustee

18  anticipates that the estate will have sufficient funds to pay PACA claims, priority wage

19  claims, and some tax claims.

20                        **III.**

21        **MEMORANDUM OF POINTS AND AUTHORITIES**

22       Section 704 of the Bankruptcy Code requires that a chapter 7 trustee "collect and

23  reduce to money the property of the estate."  11 U.S.C. § 704(a)(1).

24  **A.    The Settlement Claims Are Property of the Estate that May Be Sold.**

25       Section 363(b) of the Bankruptcy Code provides that a trustee, after notice and a

26  hearing may "use, sell, or lease, other than in the ordinary course of business, property of the

27  estate."  11 U.S.C. § 363(b)(1).  As described in detail above, the Settlement Claims are

28  property of the estate acquired by Garden Fresh pursuant to the 2017 Sale Order and Garden

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1   Fresh's operation of its restaurants.  Neither of Garden Fresh's affiliates operated the

2   restaurants nor claim an interest in the Settlement Claims.  The Settlement Claims are

3   property of this Estate and may be sold by the Trustee under Section 363(b)(1) of the

4   Bankruptcy Code.

5        The standard for approval of a sale of property of the estate under Section 363(b) of

6   the Bankruptcy Code is whether there exists "some articulated business justification" for the

7   proposed transaction. *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (B.A.P. 9th Cir.

8   1988) (quoting *Inst. Creditors v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d

9   1223, 1226 (5th Cir. 1986)).

10       Sufficient business justification exists for the proposed sale of the Settlement Claims.

11  The Settlement Claims are property of the Estate and the Trustee expects a robust sale which

12  will generate funds to pay the Estate's creditors.  In light of the foregoing, the Trustee

13  believes that the sale of the Settlement Claims is in the best interests of the Estate.

14  **B.**     **The Auction Procedures Are Appropriate and in the Best Interests of the Estate.**

15       The Trustee believes that the proposed Auction Procedures constitute the best method

16  to maximize the proceeds from the sale of the Settlement Claims.

17  **C.**     **Sale of the Settlement Claims Free and Clear of Liens and Interests is Permitted**

18           **Under Section 363(f) of the Bankruptcy Code.**

19       Section 363(f) of the Bankruptcy Code describes the circumstances under which a

20  trustee may sell property of the estate free and clear of any interest of third parties in such

21  property:

22           The trustee may sell property under subsection (b) … free and
             clear of any interest in such property of an entity other than the
23           estate only if—
             (1)    applicable non-bankruptcy law permits sale of such
24                  property free and clear of such interests;
             (2)    such entity consents;
25           (3)    such interest is a lien and the price the property is to be sold
                    is greater than the aggregate value of all liens on such
26                  property;
             (4)    such interest is in bona fide dispute; or
27           (5)    such entity could be compelled, in a legal or equitable
                    proceeding to accept a money satisfaction of such interest.
28

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1    11 U.S.C. § 363(f).

2        Here, the only Lien on the Settlement Claims is held by Cerberus.  As set forth above,

3    pursuant to the terms of the Carve-Out Stipulation, Cerberus has consented to the Trustee's

4    sale of the Settlement Claims and its payment from 70% of the net proceeds of the sale of the

5    Settlement Claims. (ECF No. 507).

6        Therefore, the Trustee may sell the Settlement Claims free and clear of such interests,

7    liens, encumbrances or claims pursuant to sections 363(f)(2), (f)(4), and (f)(5).

8    **D.**    **Accurate and Reasonable Notice of the Sale and Auction Opportunity Has Been**

9        **Provided.**

10        As described above, the Trustee has marketed the Settlement Claims since early July

11    2023.  In addition, through service of this Motion, the Trustee will also give notice of the sale

12    to all entities entitled to notice pursuant to the Court's *Order on* *Emergency* *Motion for order*

13    *Establishing Notice Procedures* (ECF No. 30) and all entities required to be given notice

14    under the federal and local bankruptcy rules.

15        In addition, the Trustee will deliver detailed instructions regarding the auction

16    procedures to everyone in her network who may be interested in purchasing the Settlement

17    Claims, everyone who responds to the Marketing Efforts, and every potential buyer who

18    expresses or has expressed an interest in participating in the auction.

19    **E.**    **Buyer Is a Good Faith Purchaser.**

20        Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification

21    on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of

22    property does not affect the validity of a sale or lease under such authorization to an entity

23    that purchased or leased such property in good faith …". 11 U.S.C. § 363(m). "Under 11

24    U.S.C. § 363(m), an appeal of a bankruptcy court's ruling on a [sale] generally cannot affect

25    the rights of a good faith purchaser of the foreclosed property, unless the debtor [or other

26    complaining party] stays the … sale pending an appeal." *Mann v. Alexander Dawson Inc. (In*

27    *re Mann)*, 907 F.2d 923, 926 (9th Cir. 1990).

28        "[T]he primary goal of the mootness rule [embodied in section 363(m)] is to protect

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

the interest of a good faith purchaser … of the property, thereby assuring finality of sales." *Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1172 (9th Cir. 1988) (internal quotation omitted). As set forth in the Gladstone Declaration, the protection of Section 363(m) is appropriate in this case because the proposed sale transaction is the product of arm's-length, good-faith negotiations implemented between the Trustee and Buyer. *See Onouli-Kona Land Co.*, 846 F.2d at 1173 (lack of good faith within meaning of section 363(m) requires "fraud, collusion, … or an attempt to take grossly unfair advantage of other bidders") (quoting *Cmty. Thrift & Loan v. Suchy (In re Suchy)*), 786 F.2d 900, 901-02 (9th Cir. 1985). Moreover, any successful overbidder will be required to overbid at the Sale Hearing before the Court, at which time the Court may determine whether such successful overbidder is a good-faith purchaser. As a consequence, the requested finding that each of Buyer or the Successful Bidder and Back-up Bidder is a "good faith" purchaser within the meaning of Bankruptcy Code Section 363(m) is appropriate.

**F.      The Break-Up Fee Is in the Best Interests of the Estate.**

In assessing a break-up fee, courts should consider the following three questions:

> (1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; (3) is the amount of the fee unreasonable relative to the proposed purchase price.

*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 657 (S.D.N.Y. 1992).

Here, the Trustee required the sale to be subject to overbid.  The Trustee includes the Break-Up Fee to encourage bidding by offering a relatively small incentive to cover the costs of investigating the Settlement Claims.  The Break-Up Fee provision is untainted by self-dealing or manipulation.  The amount of the Break-Up Fee is reasonable.  The $5,000.00 Break-Up Fee is $5,000.00 less than the $10,000.00 increase in bid amount for the suggested Initial Overbid of $60,000.00.  Furthermore, the Break-Up Fee shall only be paid in the event that the Settlement Claims are sold to a party other than Buyer or Buyer's affiliates or assignees.  Accordingly, the Break-up Fee is in the best interests of the Estate.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California  92037

**G.**    **The Sale Is in the Best Interests of the Estate.**

In view of the compelling business reasons for the proposed transaction—generating funds to pay creditors—the proposed sale is in the best interests of the Estate and should be approved.

**IV.**

**CONCLUSION**

For all the foregoing reasons, the Settlement Claims are property of the Estate and the proposed auction procedures should be approved.

WHEREFORE, the Trustee respectfully requests that the Court enter an order:

(1)    approving the proposed auction procedures;

(2)    authorizing the Trustee to consummate the sale of the Settlement Claims to Buyer or to Successful Bidder and Back-Up Bidder;

(3)    authorizing the sale free and clear of all liens, claims and interests, with any such liens, claims and interests attaching to the sale proceeds with the same validity, scope, priority, and perfection as they had on the Settlement Claims immediately prior to the closing;[10]

(4)    authorizing the payment of any existing undisputed liens from the proceeds of the sale;

(5)    finding that each of Buyer or Successful Bidder and Back-Up Bidder is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code; and

(6)    authorizing payment of the Break-Up Fee out of the proceeds of the sale of the Settlement Claims, provided that there is a consummated sale of the Settlement Claims at $60,000.00 or higher to a party other than Buyer or Buyer's affiliate or assignee.

The Trustee also requests such other and further relief as this Court deems just and proper.

---

[10] In the event the sale is not consummated, the existing lien on the Settlement Claims shall remain unaffected.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1

2   Dated:  December 13, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

FINANCIAL LAW GROUP

By:   /s/ Andrew B. Levin
        Andrew B. Levin, Esq.
        Attorneys for Leslie T. Gladstone, Trustee

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

IN RE GARDEN FRESH RESTAURANTS LLC    18    MOTION TO  APPROVE AUCTION PROCEDURES AND
CASE NO. 20-02477-LT7                        AUTHORIZE SALE OF CLASS ACTION CLAIMS