Leslie T. Gladstone, Esq.  (SBN 144615)
Andrew B. Levin, Esq.  (SBN 290209)
FINANCIAL LAW GROUP
5656 La Jolla Blvd.
La Jolla, CA 92037
Telephone: (858) 454-9887
Facsimile: (858) 454-9596
E-mail:  AndrewL@flgsd.com

Attorneys for Leslie T. Gladstone, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>GARDEN FRESH RESTAURANTS LLC,<br><br>Debtor. | Case No.:  20-02477-LT7<br><br>**DECLARATION OF LESLIE T. GLADSTONE IN SUPPORT OF TRUSTEE'S MOTION TO APPROVE AUCTION PROCEDURES AND FOR AUTHORITY TO SELL ESTATE'S INTEREST IN SETTLEMENT PROCEEDS OF CLASS ACTION LAWSUIT PURSUANT TO 11 U.S.C. SECTION 363, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS**<br><br>Date:         January 10, 2024<br>Time:        10:00 a.m.<br>Dept:         Three (3)<br>Honorable Laura S. Taylor |

I, LESLIE T. GLADSTONE, declare:

  1. I am the chapter 7 trustee for the bankruptcy estate (the "**Estate**") of Garden Fresh Restaurants LLC ("**Garden Fresh**").  All the information contained herein is within my personal knowledge, except for those matters alleged on information and belief and as to those matters, I believe them to be true.  If called as a witness, I could competently testify thereto.

  2. I offer this Declaration in support of my Motion to Approve Auction Procedures and for Authority to Sell Estate's Interest in Settlement Proceeds of Class Action Lawsuit Pursuant to 11 U.S.C. Section 363, Free and Clear of Liens, Claims, and Interests.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

3. I seek to sell certain assets of the Estate, namely claims held by the Estate as the result of a recent settlement of a class action lawsuit, upheld on appeal, that would pay settlement funds based on claims related to Visa and Mastercard charges incurred from 2004 to 2019 (the "**Settlement Claims**"). I have been marketing the Settlement Claims since July 2023. Multiple potential buyers have returned Nondisclosure Agreements and have reviewed confidential documents regarding the Settlement Claims.

4. I have received a stalking horse bid for the Settlement Claims, subject to overbid.

5. In my Motion, I request Court approval of certain auction procedures, as set forth in the Motion. I have determined that the auction procedures proposed in the Motion are most likely to maximize the value of the Settlement Claims for the benefit of the Estate.

6. According to documents filed in this case, this case was commenced by Garden Fresh on May 14, 2020 (the "**Petition Date**"), under chapter 7 of the United States Bankruptcy Code. On or about the same date, I was appointed the chapter 7 trustee of the Estate.

7. I am informed and believe that Gaden Fresh was formed in 2016 and operated a business consisting of buffet-style chain restaurants under the brand names Souplantation, Sweet Tomatoes, Souplantation Field Kitchen, and Souplantation Express, which it acquired from the bankruptcy estate of Garden Fresh Restaurant Corp. ("**GFRC**").

8. I am informed and believe that prior to the Petition Date, Garden Fresh operated between 95 and 100 restaurants across the United States.

9. I am informed and believe that the business that Garden Fresh acquired from the bankruptcy estate of GFRC started in San Diego when its founders opened their first restaurant in El Cajon and a second in Point Loma. Thereafter, the founders formed GFRC in 1983. This entity operated for over 30 years, expanding the Souplantation and Sweet Tomatoes brands across the United States West and Southwest.

### The Settlement Claims

10. I am informed and believe that the Estate holds the Settlement Claims in that certain class action lawsuit was filed in the Unites States District Court for the Eastern District of New York (the "**EDNY**") captioned *In re Payment Card Interchange Fee and Merchant*

*Discount Antitrust Litigation*, MDL 1720 (MKB) (JO) (the "**Class Action**"). These Settlement Claims are based on Garen Fresh's ownership and operation of its restaurant that accepted Visa or Mastercard credit or debit cards between January 1, 2004, and January 25, 2019, as well as the purchase of claims from GFRC.

11. I do not possess records dating back to 2004 to determine the amount of the Settlement Claims. As set forth in the Notice of Class Action Settlement (the "**Settlement Notice**") as authorized by the EDNY, regarding the settlement of the Class Action, the class administrator in the Class Action (the "**Class Administrator**") will have data to determine the amount of each claim asserted in the Class Action, including in the subject Garden Fresh Settlement Claims.

12. I do have some relevant information regarding the scope of the Settlement Claims that has been made available to potential bidders, namely (i) estimates of Garden Fresh's total sales for 2016, 2017, and 2018 as well as the total number of transactions with Visa cards and Mastercard cards for 2018 and (ii) Garden Fresh's merchant account statements from Chase Paymentech for the period December 2007 to January 2019, which provide detailed information regarding total daily transactions with Visa, Mastercard, and other cards for each of Garden Fresh's locations.

13. I am informed that the Settlement Claims have value for the Estate.

**Sale of the Settlement Claims Free and Clear of Liens, Claims, and Interests**

14. I am informed and believe that, as of the Petition Date, Cerberus Business Finance LLC ("**Cerberus**"), in its capacity as collateral agent and administrative agent for the Lenders (together with Cerberus, the "**Secured Creditors**") under, and as defined in, that certain Financing Agreement, dated as of February 1, 2017, to which Garden Fresh and GFRC Promotions LLC, as co-borrowers, and GFRC Holdings, LLC, as guarantor, are parties (the "**Financing Agreement**"), asserts a security interest in the Settlement Claims pursuant to the terms of the Financing Agreement.

15. On July 20, 2020, I entered into a stipulation (the "**Carve-Out Stipulation**") with Cerberus and various third parties, approved by the Court on August 20, 2020, pursuant to

1  which Cerberus agreed to allow me to market and sell, among other things, the Settlement
2  Claims, with the net proceeds of any such sale split 30% to the Estate (as a carve-out from the
3  Secured Creditors' claims) and 70% to the Secured Creditors.

### Marketing of the Settlement Claims for Sale

16. The Settlement Claims are an unusual asset for which standard marketing efforts would be ineffective. I have a broad network of buyers interested in purchasing unusual assets from bankruptcy estates.

17. On July 6, 2023, at my request, my counsel contacted by email 20 third parties that had previously expressed an interest in purchasing the Settlement Claim and/or are known potential purchasers in the industry, providing a detailed information regarding the Settlement Claims and my intended sale of the Settlement Claims.

18. Thereafter, I expanded the scope of my marketing efforts to include additional known potential purchasers in the industry. On September 25, 2023, at my request, my counsel sent an email to the members of the National Association of Bankruptcy Trustees announcing my efforts to sell the Settlement Claims.

19. In addition, on September 27, 2023, at my request, my counsel contacted an additional 89 third parties by email to provide detailed information regarding the Settlement Claims and the Trustee's intended sale of the Settlement Claims.

20. As a result of these marketing efforts (collectively, the "**Marketing Efforts**"), I received eleven (11) signed nondisclosure agreements from potential purchasers seeking additional information regarding the Settlement Claims and three (3) offers to purchase the Settlement Claims.

21. I determined that the highest and best offer for the Settlement Claims was in the amount of $50,000.00, received by Clearwater Recovery Partners LLP (the "**Buyer**").

22. A copy of the Asset Purchase Agreement (the "**Purchase Agreement**") with Buyer is attached hereto as Exhibit A.

23. I am not aware of any other higher and better firm offer to purchase the Settlement Claims.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

IN RE GARDEN FRESH RESTAURANTS LLC           4           GLADSTONE DEC RE MOTION TO APPROVE AUCTION
CASE NO. 20-02477-LT7                                                          PROCEDURES AND SELL SETTLEMENT CLAIMS

24. I am informed and believe that neither Buyer nor any other party that submitted a nondisclosure agreement is an insider of Garden Fresh.

25. This proposed sale has been negotiated at arm's length.

**Notice of the Proposed Sale**

26. Through service of the Motion, I will also give notice of the sale to all entities entitled to notice pursuant to the Court's *Order on <u>Emergency</u> Motion for order Establishing Notice Procedures* (ECF No. 30) and all entities required to be given notice under the federal and local bankruptcy rules.

27. In addition, I will deliver detailed instructions regarding the auction procedures to everyone in my network who may be interested in purchasing the Settlement Claims, everyone who responds to the Marketing Efforts, and every potential buyer who expresses or has expressed an interest in participating in the auction.

28. The proposed sale transaction is the product of arm's-length, good-faith negotiations implemented between Buyer and me.

29. I believe that the proposed auction procedures detailed in my Motion constitute the best method to maximize the proceeds from the sale of the Settlement Claims.

30. I have determined, in an exercise of my sound business judgment, that the proposed sale of the Settlement Claims is in the best interests of the estate and should be approved.

31. I have included the $5,000.00 break-up fee (the "**Break-Up Fee**") to encourage bidding by offering a relatively small incentive to cover the costs of investigating the Settlement Claims.

32. The Break-Up Fee provision is untainted by self-dealing or manipulation.

33. I believe that the amount of the Break-Up Fee is reasonable.

1  I declare under penalty of perjury that the foregoing is true and correct.

2  Executed on December 13, 2023, at La Jolla, California.

          /s/ Leslie T. Gladstone
          Leslie T. Gladstone

Financial Law Group
5656 La Jolla Boulevard
La Jolla, California 92037

IN RE GARDEN FRESH RESTAURANTS LLC    6    GLADSTONE DEC RE MOTION TO APPROVE AUCTION
CASE NO. 20-02477-LT7    PROCEDURES AND SELL SETTLEMENT CLAIMS

# Exhibit A

# Exhibit A

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "**Agreement**") is made and entered into as of 21 November, 2023, by and between Clearwater Recovery Partners LLP ("**Buyer**"), and LESLIE T. GLADSTONE ("**Seller**"), solely in her role as the chapter 7 trustee of the estate of debtor GARDEN FRESH RESTAURANTS, LLC ("**Garden Fresh**"), a Delaware limited liability company with federal tax identification number 38-4023433. Each of Seller and Buyer is a "**Party**" and collectively they are the "**Parties**" to this Agreement.

### RECITALS

A. On or about May 14, 2020 (the "**Petition Date**"), Garden Fresh filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California (the "**Bankruptcy Court**"), Case No. 20-02477-LA7 (the "**Bankruptcy Case**"). Seller was appointed as chapter 7 trustee for the Bankruptcy Case.

B. The assets of the Garden Fresh bankruptcy estate (the "**Estate**") include any and all claims (the "**Visa/Mastercard Claims**") that Garden Fresh has the right to file in that certain class action litigation in the United States District Court for the Eastern District of New York captioned *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL 1720 (MKB) (JO), based on Garden Fresh's ownership and operation of restaurant locations that accepted Visa or Mastercard credit or debit cards between January 1, 2004, and January 25, 2019.

C. The Visa/Mastercard Claims may be sold by Seller, after notice and opportunity for hearing, upon approval by the Bankruptcy Court.

NOW, THEREFORE, Seller and Buyer agree as follows:

### AGREEMENT

1. <u>Purchase Price</u>. Buyer agrees to purchase and Seller agrees to sell the Visa/Mastercard Claims for a purchase price of fifty thousand and 00/100ths Dollars ($50,000.00) ("**Purchase Price**"), payable within ten (10) days after entry of the Bankruptcy Court's order approving the sale.

2. <u>Initial Deposit</u>. An initial deposit in the amount of $5,000.00 ("**Initial Deposit**") shall be due and payable to Seller at the time this Agreement is executed. In the event the sale of the Visa/Mastercard Claims to Buyer is approved by the Bankruptcy Court, the amount of the Initial Deposit shall be credited toward the Purchase Price. In the event the sale of the Visa/Mastercard Claims to Buyer is not approved by the Bankruptcy Court and/or an overbid is accepted by the Seller and the Visa/Mastercard Claims are sold for $60,000.00 or more to any party other than the Buyer or the Buyer's affiliate or assignee, the Initial Deposit shall be fully refunded to the Buyer within five (5) business days; provided, however, that in the event of the Buyer's default under this Agreement, the Initial Deposit shall not be paid to the Buyer.

3. <u>Conditions to Buyer's Obligation to Purchase</u>. Buyer's obligation to purchase the Visa/Mastercard Claims is expressly conditioned upon the following:

    (a) <u>Court Approval</u>. Entry of a final order by the Bankruptcy Court approving the sale of the Visa/Mastercard Claims to Buyer.

4. <u>Conditions to Seller's Obligation to Sell</u>. Seller's obligation to sell the Visa/Mastercard Claims to Buyer pursuant to this Agreement is expressly conditioned upon each of the following:

    (a) <u>Performance by Buyer</u>. Timely performance by Buyer of each obligation, covenant, contingency, and condition hereunder.

    (b) <u>Payment of Purchase Price</u>. Payment in full of the Purchase Price to Seller.

    (c) <u>Court Approval</u>. Entry of a final order by the Bankruptcy Court approving the sale of the Visa/Mastercard Claims to Buyer.

5. <u>Condition of the Asset</u>.

    (a) IT IS UNDERSTOOD AND AGREED THAT, UNLESS EXPRESSLY STATED HEREIN, SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE VISA/MASTERCARD CLAIMS, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES OR REPRESENTATIONS AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

    (b) BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE VISA/MASTERCARD CLAIMS "**AS IS, WHERE IS, WITH ALL FAULTS**." BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATION OR INFORMATION PERTAINING TO THE VISA/MASTERCARD CLAIMS OR RELATING THERETO MADE OR FURNISHED BY SELLER OR ITS REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN. BUYER ALSO ACKNOWLEDGES THAT THE PURCHASE PRICE REFLECTS AND TAKES INTO ACCOUNT THAT THE VISA/MASTERCARD CLAIMS ARE BEING SOLD "AS IS, WHERE IS, WITH ALL FAULTS."

    (c) BUYER ACKNOWLEDGES TO SELLER THAT BUYER HAS HAD THE OPPORTUNITY TO CONDUCT PRIOR TO CLOSING SUCH INSPECTIONS AND INVESTIGATIONS OF THE VISA/MASTERCARD CLAIMS AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE VISA/MASTERCARD CLAIMS AND ITS ACQUISITION THEREOF. BUYER HEREBY ASSUMES THE RISK THAT ADVERSE MATTERS INCLUDING, BUT NOT LIMITED TO, LATENT OR PATENT DEFECTS, ADVERSE PHYSICAL OR OTHER ADVERSE MATTERS, MAY NOT HAVE BEEN REVEALED BY BUYER'S REVIEW AND INSPECTIONS AND INVESTIGATIONS.

6. <u>Limited Power of Attorney; Further Assurances</u>. Seller hereby irrevocably appoints Buyer as its true and lawful attorney in fact and authorizes Buyer to act in Seller's name, place and stead, or otherwise, to demand, sue for, compromise and recover all such sums of money that now are or that hereafter might become due and payable for or on account of the Visa/Mastercard Claims, and grants to Buyer full authority to do all things necessary to enforce the Visa/Mastercard Claims, including, but not limited to: (a) file or submit, for Buyer's exclusive benefit, any claim form or similar document with respect to the Visa/Mastercard Claims; (b) receive distributions or other payments in connection with the Visa/Mastercard Claims; (c) endorse and deposit into Buyer's account any check or other instrument that may be issued in connection with the Visa/Mastercard Claims; and (d) agree to less favorable treatment or a lower notional amount for the Visa/Mastercard Claims than other similarly situated claimants. Seller agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyer and Buyer shall have no obligation to take any action to prove,

defend, demand or take any action with respect to the validity or amount of the Visa/Mastercard Claims or otherwise. Seller agrees to (i) (at Buyer's reasonable request and expense) execute, acknowledge and deliver all such further certificates, instruments and other documents, and to take all such further action as may be reasonably necessary or appropriate to (a) effect the assignment of the Visa/Mastercard Claims and all interests therein to Buyer and have Buyer recognized by Epiq Class Action & Mass Tort Solutions ("Epiq") as owner of the Visa/Mastercard Claims,and (b) otherwise effectuate the intent of this Agreement and (ii) promptly forward to Buyer all notices, documents or other information received from the District Court, Epiq, or any other third party with respect to the Visa/Mastercard Claims. Seller further agrees that if and to the extent that Seller has preregistered information with an Epiq, it will update its submission to provide for the transfer of the Visa/Mastercard Claims to Buyer including, but not limited to, listing Buyer's name, address, phone number and email address as the contact information with respect to the Visa/Mastercard Claims. Without limiting the generality of the foregoing, if and to the extent that Epiq or any other claims administrator, counsel for any party in the Litigation, any court of competent jurisdiction, or persons or entities acting in similar respective capacities, do not recognize Buyer as having the requisite standing or authority to file the Visa/Mastercard Claims, in Seller's name or otherwise, then Seller agrees to file the Visa/Mastercard Claims on Buyer's behalf upon written request (and at the sole expense) of Buyer. Seller agrees that it will not take any action with respect to the Visa/Mastercard Claims, including filing any objection relating to the Visa/Mastercard Claims, without the Buyer's prior, written consent

7. Distributions. Seller agrees that in the event Seller receives any payments, recoveries, proceeds, disbursements or distributions with respect to or relating to the Visa/Mastercard Claims, whether in the form of cash, securities, instruments or other property, Seller will accept the same as Buyer's agent and will hold the same in trust for and on behalf of and for the sole benefit of Buyer, and, at Seller's expense, promptly deliver the same forthwith to Buyer in the same form received (free of any withholding, set-off, claim or deduction of any kind), together with any endorsements or documents necessary to transfer such distributions or payments to the Buyer, within three (3) business days in accordance with Buyer's written instructions.

8. Sale Subject to Bankruptcy Court Approval. Buyer and Seller acknowledge that this Agreement must be approved by the Bankruptcy Court after notice to other interested parties.

9. Auction Procedures and Overbid. Buyer and Seller acknowledge that the sale of the Visa/Mastercard Claims is subject to overbid. The minimum overbid amount shall be $60,000.00 and incremental overbids thereafter shall be a minimum of $5,000.00, or such other amounts as ordered by the Bankruptcy Court. Buyer and Seller further acknowledge that the Bankruptcy Court will be the ultimate decisionmaker as to whether the sale is permitted to go forward and the terms of any overbid.

10. Break-Up Fee. In the event an overbid is accepted by the Seller and the Visa/Mastercard Claims are sold for $60,000.00 or more to any party other than the Buyer or the Buyer's affiliate or assignee, then the Seller shall pay to the Buyer a break-up fee in the amount of $5,000.00 (the "**Break-up Fee**"), which shall be classified as an Administrative Expense under Section 503(b)(1)(A) of the Bankruptcy Code; provided, however, that in the event of the Buyer's default under this Agreement, the Break-Up Fee shall not be paid to the Buyer.

11. Authority, Approval and Enforceability. Seller has the necessary capacity, power and authority, subject to Bankruptcy Court approval, to enter into this Agreement, to carry out its obligations hereunder, and to consummate the transaction contemplated herein.

12. <u>**LIQUIDATED DAMAGES**</u>. If Buyer fails to complete this purchase because of Buyer's default and due to no other cause, Seller shall retain, as liquidated damages, 10% of the Purchase Price or Five Thousand and 00/100ths Dollars ($5,000.00), whichever amount is higher. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish an amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. In addition, if Buyer fails to complete this purchase because of Buyer's default, Seller shall have the option, but not the requirement, to bring an action for specific performance and thereby require performance in full of this Agreement. In such event, Seller shall also be able to recover reasonable attorney's fees incurred in enforcing this Agreement.

**Buyer's Initials:** _JT_       **Seller's Initials:** _____

13.   <u>Time of the Essence</u>. Buyer and Seller agree that time is of the essence with respect to each and every condition required to be satisfied herein.

14.   <u>Execution of Documents</u>. Buyer and Seller shall execute all instruments and documents and perform all acts reasonably required to accomplish the purpose of this Agreement.

15.   <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties except for any other agreements referenced herein, and all other previous or contemporaneous oral or written agreements are merged into same. This Agreement can be amended, supplemented, or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the Party against whom enforcement of any such amendment, supplement, modification, or waiver is sought. The waiver by any Party of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any Party to exercise, and no delay in exercising, any right, power, or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power, or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power, or remedy.

16.   <u>Applicable Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the United States, including the United States Bankruptcy Code and Federal Rules of Bankruptcy Procedure, and the laws of the State of California, as applicable.

17.   <u>Submission to Jurisdiction; Consent to Service of Process</u>. Without limiting any Party's right to appeal any order of the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby.

18. <u>Notices</u>. All notices, consents, waivers, and communications hereunder given by any party to the other shall be in writing (including electronic mail) and delivered personally, by electronic mail, by a recognized overnight courier, or by dispatching the same by certified or registered mail, return receipt requested, with postage prepaid, in each case addressed:

|  |  |
|---|---|
| If to Buyer to: | Joshua Tucker<br>Clearwater Recovery Partners LLP<br>One Gateway Center, 1, Ste #2600<br>E-mail: ops@clearwaterllp.com |
| with a copy to: | Peter Herzog<br>Galvan Capital<br>2901 Via Fortuna<br>Austin, TX 78746<br>E-mail: pherzog@galvancap.com |
| If to Seller to: | Leslie T. Gladstone, Trustee<br>FINANCIAL LAW GROUP<br>5656 La Jolla Blvd.<br>La Jolla, CA 92037<br>E-mail: LeslieG@flgsd.com |
| with a copy to: | Andrew B. Levin, Esq.<br>FINANCIAL LAW GROUP<br>5656 La Jolla Blvd.<br>La Jolla, CA 92037<br>E-mail: AndrewL@flgsd.com |

19. <u>Attorneys' Fees</u>. In the event either party commences an action, arbitration, or other proceeding against the other party to enforce any of the provisions of this Agreement, or in the event any party is involved in litigation, arbitration, or other proceeding by reason of any act of the other party relative to this Agreement, the prevailing party shall be entitled to receive from the other party reasonable attorneys' fees, costs, and expenses incurred in connection with any such action or litigation.

20. <u>Severability</u>. If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any matter materially adverse to any Party.

21. <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a Party to this Agreement. Nothing in this Agreement is intended to relieve or discharge the obligations or liability of any third Persons to Seller or Buyer.

22. <u>Assignment</u>. Buyer shall have the right to assign Buyer's rights hereunder, but any such assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.

23. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement

**SELLER:**                  **BUYER:**

_____      _____
Leslie T. Gladstone, Trustee           Joshua Tucker
Estate of Garden Fresh Restaurants, LLC    Authorised Signatory
Bankruptcy Case No. 20-02477-LA7      Clearwater Recovery Partners LLP

# EXHIBIT A

## Limited Authorization to Obtain Transactional Data

[attached]

## LIMITED AUTHORIZATION TO OBTAIN TRANSACTIONAL DATA

THIS AGREEMENT (the "Agreement") is entered into on 21 November, 2023 (the "Agreement Date"), by and between LESLIE T. GLADSTONE, solely in her role as the chapter 7 trustee of the estate of debtor GARDEN FRESH RESTAURANTS, LLC , a Delaware limited liability company with federal tax identification number 38-4023433 ("Seller") and Clearwater Recovery Partners LLP ("Buyer").

Seller has assigned to Buyer certain rights to any recovery arising from that certain putative consolidated class action entitled *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Case No. 05-MD-1720 (MKB)(JO)) pending in the United States District Court for the Eastern District of New York (the "Claim"). The Claim relates to credit card and debit card transactions occurring at any time since January 1, 2004.

As used in this Authorization, (a) the term "Transactional Data" means data from or related to credit card or debit card transactions in which Seller received payment for goods sold or services provided, to the extent and in such scope as directly relevant to the Claim; and (b) the term "Processors" means Seller's acquiring banks, credit card processors, any other entity involved in processing or recording credit card or debit card transactions, and any third party holding or possessing any or all of Seller's Transactional Data, to the extent and in such scope as directly relevant to the Claim.

Seller hereby directs and authorizes all Processors to release and provide to Buyer any and all Transactional Data to the extent and in such scope as directly relevant to the Claim. Seller hereby authorizes Buyer to request, demand, obtain and receive from any source all of Seller's Transactional Data.

The undersigned have executed this Authorization as of the date set forth above.

**SELLER:**

_____
Leslie T. Gladstone, Trustee
Estate of Garden Fresh Restaurants, LLC
Bankruptcy Case No. 20-02477-LA7

**BUYER:**

*/s/ Joshua Tucker*

_____
Joshua Tucker
Authorised Signatory
Clearwater Recovery Partners LLP

## EXHIBIT B

**Notice of Transfer and Assignment of Rights and Acknowledgment of Receipt**

[attached]

## NOTICE OF TRANSFER AND ASSIGNMENT OF RIGHTS

To: Claims Administrator of Settlement Arising from *In re Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation*, Case Number 1:05-md-01720-JG-JO, pending before the Eastern District of New York (the "Litigation")

We hereby give notice that pursuant to that certain Assignment Agreement ("Assignment Agreement"), executed by and between LESLIE T. GLADSTONE, solely in her role as the chapter 7 trustee of the estate of debtor GARDEN FRESH RESTAURANTS, LLC, a Delaware limited liability company with federal tax identification number 38-4023433 ("Seller") and Clearwater Recovery Partners LLP ("Buyer"), Seller has absolutely and unconditionally transferred and assigned to Buyer all of Seller's economic rights, title, and interest in and to, or associated with, or connected in any manner to, any claim in, or recovery or settlement against and settlement arising from the Litigation.

The rights assigned to Buyer include, but are not limited to, Seller's right to (1) file, amend or compromise a claim in the Litigation; (2) challenge any and all estimates for payment of that claim; (3) communicate with, and receive communications and notices from, third-parties, including the claims administrator; and (4) receive any recovery or settlement paid in connection with the Litigation. Seller has provided Buyer with merchant identification information listed on the attached Schedule 1.

Buyer is now the legal and equitable owner of all economic rights associated with the Litigation. As such, you should deal directly with Buyer or its duly appointed agents on all matters pertaining to Seller's rights in the Litigation. Further, in accordance with the Assignment Agreement, any and all payments relating to the Litigation should be made payable to Buyer and sent to the following address:

> Clearwater Recovery Partners LLP
> 1 Gateway Center, Suite #2600
> Newark, NJ 07102
> United States
>
> Attention: Joshua Tucker
> Email: ops@clearwaterllp.com

Moreover, any and all correspondence, documents, or any other communications pertaining to the Litigation should be directed to Buyer at the above-listed address.

Dated 21 November, 2023

**SELLER:**                                              **BUYER:**

_____                    _____
Leslie T. Gladstone, Trustee                    Joshua Tucker
Estate of Garden Fresh Restaurants, LLC    Authorised Signatory
Bankruptcy Case No. 20-02477-LA7             Clearwater Recovery Partners LLP

11