CSD 2024 [04/28/96]
Name, Address, Telephone No. & I.D. No.

Leslie T. Gladstone, Trustee
5656 La Jolla Blvd.
La Jolla, CA 92037
Telephone (858) 454-9887

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In re

GARDEN FRESH RESTAURANTS, LLC,

Debtor(s).

BANKRUPTCY NO. 20-02477-CL7

## REPORT OF SALE

Pursuant to Local Bankruptcy Rule 6004, the undersigned Trustee hereby reports and represents that:

1. On **October 22, 2020 (ECF No. 661)**, due notice of the Trustee's intent to sell the property described herein was mailed to the debtor, the debtor's attorney and all creditors as required by Local Bankruptcy Rules 2002 and 6004.

2. The time for filing a request for hearing has expired without an objection or request for hearing having been received by the undersigned.

3. A description of the property sold, name of the purchaser(s), and the terms of sale are set forth in Exhibit "1."

4. If applicable, the following entities held a valid security interest in all or part of the property sold and were paid the stated sums in satisfaction thereof:

| Name and Address | Property | Amount Paid |
| --- | --- | --- |

5. The purchase price has been paid in full and all property delivered to the purchaser.

I hereby declare under penalty of perjury that the within and attached statements are true to the best of my knowledge and belief.

DATED: March 31, 2026

/s/ Leslie T. Gladstone
Trustee in Bankruptcy


[Continued on Page 2]

EXHIBIT "A"

GARDEN FRESH RESTAURANTS, LLC, DEBTOR, CASE NO. 20-02477-CL7

**Type of Sale:**[1]

[XX ] Private Sale. Describe methods used to obtain best possible price:[2]

**Description of Property Sold**

(a) Trademarks, together with all agreements with third parties and goodwill associated therewith;
(b) Common law copyrights;
(c) Domain names, together with all of the goodwill associated therewith;
(d) Social media accounts (to the extent transferrable by the social media Provider);
(e) The certain Brand and Product License Agreement, dated April 30, 2013, with Gold Coast Packing, Inc., as licensee (the "**Gold Coast Agreement**") and all proceeds arising in connection thereto from and after Closing;
(f) Trade secrets, including without limitation, recipes, marketing materials, and customer lists; and
(g) Any and all income, royalties, damages and payments now or hereafter due and/or payable with respect to the Assets including, without limitation, damages and payments for past, present or future infringements, except that the estate retains all rights/proceeds from any infringement asserted by the estate against a third party prior to closing to the extent these rights/proceeds are compensation for damages incurred by the estate prior to closing.

| **Name and Address of Purchaser(s)** | **Sales Price per Item or Lot** |
|---|---|
| **ST Two LLC** | **$500,000.00** |

Offers or bids received but not accepted from the following entities:

| Name | Value of Offer |
|---|---|

[ ] Public Auction. Auction conducted by ______________________________

Report of Auctioneer attached containing:[3]

List of the names of bidders and assigned bidding numbers, if any; and

- Description of items sold, purchase price, and name or bidder number for purchaser for each item or lot sold; plus
- A cover page containing a summation of the gross sales, and a statement of the commission and expenses applied for or retained by the auctioneer.

A statement that there was at the time of employment, and continued to be during the period of employment, a disinterested person as required under 11 U.S.C. §327, or, if so, the nature thereof.

Reviewed and Approved:

DATED: March 31, 2026

Signed: /s/ Leslie T. Gladstone, Trustee

---

INSTRUCTIONS

[1]Indicate method of sale, whether by sealed bids, negotiations or otherwise.

[2]Describe advertising, telephone or other forms of solicitation for offers, negotiations and any other methods used to consummate sale.

[3]Auctioneer's report is to be signed under penalty of perjury, to contain all of the information here set forth, and to be reviewed and approved by trustee.

CSD 1001A [07/01/18]

Name, Address, Telephone No. & I.D. No.
Leslie T. Gladstone, Esq., (SBN 144615)
Christin A. Batt, Esq., (SBN 222584)
Derek A. Soinski, Esq., (SBN 293747)
Financial Law Group
401 Via Del Norte, La Jolla, CA 92037
Telephone (858) 454-9887; Facsimile (858) 454-9596
Attorneys for Leslie T. Gladstone, Chapter 7 Trustee

Order Entered on
November 19, 2020
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re

GARDEN FRESH RESTAURANTS LLC,

Debtor(s).

BANKRUPTCY NO. 20-02477-LA7

Date of Hearing: November 19, 2020
Time of Hearing: 2:00 p.m.
Name of Judge: Louise DeCarl Adler

**ORDER ON TRUSTEE'S MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACT PURSUANT TO 11 U.S.C. SECTION 365, AND SELL AND ASSIGN PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. SECTION 363, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS**

The court orders as set forth on the continuation pages attached and numbered 2 through 20 with exhibits, if any, for a total of 20 pages. Motion/Application Docket Entry No. 661, 692, 699, 701

//

//

//

//

//

//

//

DATED: November 19, 2020

Louise DeCarl Adler
Judge, United States Bankruptcy Court

On October 22, 2020, Leslie T. Gladstone, chapter 7 Trustee (the "**Trustee**") filed and served her Motion to Assume and Assign Executory Contract Pursuant to 11 U.S.C. Section 365, and Sell and Assign Property of the Estate Pursuant to 11 U.S.C. Section 363, Free and Clear of Liens, Claims, and Interests and the Memorandum of Points and Authorities in Support Thereof (the "**Motion**").

On September 23, 2020, the Court approved the sale of certain assets of the bankruptcy estate including intellectual property and trademark assets (the "**Sold IP**") to Sahara Capital Partners, LLC (the "**Sahara Sale Order**"). (ECF No. 629).

Remaining assets of the Estate include certain intellectual property rights of the Debtor as follows and as more fully described in Exhibit A to the Asset Purchase Agreement (the "**Assets**"):

(a) Trademarks, together with all agreements with third parties and goodwill associated therewith;
(b) Common law copyrights;
(c) Domain names, together with all of the goodwill associated therewith;
(d) Social media accounts (to the extent transferrable by the social media Provider);
(e) The certain Brand and Product License Agreement, dated April 30, 2013, with Gold Coast Packing, Inc., as licensee (the "**Gold Coast Agreement**") and all proceeds arising in connection thereto from and after Closing;
(f) Trade secrets, including without limitation, recipes, marketing materials, and customer lists; and
(g) Any and all income, royalties, damages and payments now or hereafter due and/or payable with respect to the Assets including, without limitation, damages and payments for past, present or future infringements, except that the estate retains all rights/proceeds from any infringement asserted by the estate against a third party prior to closing to the extent these rights/proceeds are compensation for damages incurred by the estate prior to closing.

Substantially all of the assets of the Debtor, including the Assets, are alleged to be subject to the secured liens of Cerberus Business Finance, LLC ("**Cerberus**"), in its capacities as collateral agent and administrative agent for Lenders under, and as defined in, that certain financing agreement dated as of February 1, 2017, to which the Debtor is a party. Cerberus has agreed to release its liens as to the Assets in connection with this sale of the Assets. For the avoidance of doubt, Cerberus is not releasing any of its liens on any assets of the Debtor other than the Assets.

The Trustee negotiated a sale of the Assets, subject to overbid and Court approval, to ST Two LLC or its designee of record (the "**Buyer**") for a total consideration of Five Hundred Thousand Dollars ($500,000.00) from Buyer. On October 5, 2020, the Court approved bid procedures for the sale of the Assets. (ECF No. 653).

No opposition was received except a late-filed limited response by Gold Coast Packing, Inc. ("**Gold Coast**"), a licensee of certain trademarks that are being assigned by the Motion (the "**Gold Coast Response**"). The Gold Coast Response simply reserved alleged rights to terminate the license. Any such rights would be as provided in the Gold Coast Agreement and are not relevant as to whether the Motion should be granted. No opposition was made to the Motion by Gold Coast.

On November 19, 2020, at 2:00 p.m., this matter was scheduled for hearing in the above-entitled Court. As the Motion was unopposed and no bidders satisfied the bid procedure prequalification requirements, the Trustee was excused from appearance at the hearing.

The Court, having considered the Trustee's Motion to Assume and Assign Executory Contract Pursuant to 11 U.S.C. Section 365, and Sell and Assign Property of the Estate Pursuant to 11 U.S.C. Section 363, Free and Clear of Liens, Claims, and Interests, the Memorandum of Points and Authorities in Support Thereof, and the supplemental Declaration of Leslie T. Gladstone in Support of Trustee's Motion to Assume and Assign Executory Contract Pursuant to 11 U.S.C. Section 365, and Sell and Assign Property of the Estate Pursuant to 11 U.S.C. Section 363, Free and Clear of Liens, Claims, and Interests, for the reasons stated in the record and for good cause appearing therefor,



Signed by Judge Louise DeCarl Adler November 19, 2020

IT IS HEREBY ORDERED.

1. The Trustee's Motion to Assume and Assign Executory Contract Pursuant to 11 U.S.C. Section 365, and Sell and Assign Property of the Estate Pursuant to 11 U.S.C. Section 363, Free and Clear of Liens, Claims, and Interests is granted in its entirety.

2. ST Two LLC or its designee of record ("**Buyer**") is confirmed as the successful purchaser of the Assets for the purchase price of $500,000.00, of which $100,000.00 has been paid.

3. The sale of the Assets is authorized and made pursuant to the Asset Purchase Agreement attached as Exhibit 1 hereto and the terms, conditions and transactions therein are hereby approved in all respects.

4. The Trustee is authorized to assume the Gold Coast Agreement and assign the Gold Coast Agreement to Buyer.

5. The sale to Buyer is made pursuant to 11 U.S.C. Section 363(f) of the Bankruptcy Code, free and clear of all liens, claims and interests, with any such liens, claims and interests attaching to the sale proceeds with the same validity, scope, priority, and perfection as they had on the Assets immediately prior to the closing (subject to the approved carve-out agreements). In the event that the sale of the Assets does not close, all such liens, shall remain unaffected.

6. The Trustee is authorized to make payment of any existing undisputed liens from the proceeds of the sale pursuant to terms of any relevant carve-out stipulations.

7. The Court finds that Buyer is a good-faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code.

8. The fourteen-day stay provided in Rule 6004(h) is hereby waived; closing may occur upon entry of this Order, or as soon as practicable thereafter. This Order shall be effective and enforceable immediately upon entry.

9. To the extent not already waived by the Trustee, the Trustee's right to surcharge the Assets and the proceeds thereof under Section 506(c) of the Bankruptcy Code is preserved.

10. Trustee is authorized to take all actions necessary to consummate the sale with ST Two LLC or its designee of record.

IT IS SO ORDERED.



Signed by Judge Louise DeCarl Adler November 19, 2020

# EXHIBIT "1"

EXHIBIT "1"

# ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREMENT (the "**Agreement**") is made and entered into as of October 20, 2020, by and between ST Two LLC, or its designee of record ("**Buyer**"), and LESLIE T. GLADSTONE ("**Seller**") solely in her role as the chapter 7 trustee of the estate of GARDEN FRESH RESTAURANTS LLC ("**Debtor**"). Each of Seller and Buyer is a "**Party**" and collectively they are the "**Parties**" to this Agreement.

RECITALS

A. On or about May 14, 2020 (the "**Petition Date**"), Debtor filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California (the "**Bankruptcy Court**"), in current Case No. 20-02477-LA7 (the "**Bankruptcy Case**"). Seller was appointed as chapter 7 trustee on May 15, 2020.

B. On or about September 23, 2020, the Bankruptcy Court approved a sale of certain intellectual property assets to Sahara Capital Partners, LLC (the "**Garden Fresh Trademark Sale Agreement**"). The assets sold by the Garden Fresh Trademark Sale Agreement were as follows:

(1) A membership interest in the GFRC Holdings entity;
(2) The GARDEN FRESH trademarks and related GARDEN FRESH domain names, as set out on Exhibit B hereto; and
(3) Records of payroll history.

C. The remaining assets of the bankruptcy estate include certain intellectual property rights, specifically the following, and as more fully set out below and on Exhibit A hereto (the "**Assets**"):

(1) All remaining intellectual property assets owned, licensed or used by the Debtor for its business as follows:

(a) Trademarks, together with all agreements with third parties and goodwill associated therewith;
(b) Common law copyrights;
(c) Domain names, together with all the goodwill associated therewith;
(d) Social media accounts (to the extent transferrable by the social media Provider);
(e) The certain Brand and Product License Agreement with Gold Coast Packing, Inc., and all proceeds arising in connection thereto from and after Closing;
(f) Trade secrets, including without limitation, recipes, marketing materials, and customer lists; and
(g) Any and all income, royalties, damages, and payments now or hereafter due and/or payable with respect to the Assets including, without limitation, damages and payments for past, present or future infringements, except that the estate retains all rights/proceeds from any infringement asserted by the estate against a third party prior to Closing to the extent these rights/proceeds are compensation for damages incurred by the estate prior to Closing.

D. Substantially all of the assets of the Debtor, including the Assets, are alleged to be subject to the secured liens of Cerberus Business Finance, LLC, in its capacities as collateral agent and administrative agent (the "**Agent**") for Lenders under, and as defined in, that certain financing agreement dated as of February 1, 2017, to which Debtor is a party. The Agent has agreed to release its liens as to the Assets in connection with this Agreement. For the avoidance of doubt, the Agent is not releasing any of its liens on any assets of the Debtor other than the Assets.

E. Seller now desires to sell and assign, and Buyer now desires to purchase and assume, the Seller's and Debtor's rights, interest, and title to the Assets pursuant to the terms and subject to the conditions set forth in this Agreement.

F. Buyer understands that this Agreement may be one of multiple copies being provided by Seller to various potential purchasers.

WHEREFORE, in consideration of the mutual covenants herein contained, the Parties hereto agree as follows:

## ARTICLE I.
## PURCHASE AND SALE OF ASSETS

Section 1.01 Purchase and Sale of Assets. Seller agrees to sell, transfer, assign and deliver to Buyer, and Buyer agrees to purchase and accept from Seller on the Closing Date (as hereinafter defined) free and clear of all interests and encumbrances, all of Seller's and all of Debtor's right, title and interest in and to the Assets as follows:

**Trademarks:** Seller sells, transfers and conveys to Buyer all of its and the Debtor's right, title and interest in and to the trademarks set forth in Exhibit A (the "**Marks**") as of the Closing Date, including without limitation any and all related service marks, tradenames, brand names, logos, trade dress and other similar designations of source or origin, registrations, applications, and/or common law rights for the Marks throughout the world, together with all of the goodwill of Debtor's business symbolized by or associated with the Marks, and any and all income, royalties, damages and payments now or hereafter due and/or payable with respect thereto including without limitation, damages and payments for past, present or future infringements, (a) except that the estate retains all rights/proceeds from any infringement asserted by the estate against a third party prior to Closing to the extent these rights/proceeds are compensation for damages incurred by the estate prior to Closing and (b) except for any of the assets set out in Exhibit B hereto.

**Other Intellectual Property**

a. **Common Law Copyrights**. Seller is informed and believes that Debtor does not own any registered copyrights. However, Seller hereby sells, transfers and conveys to Buyer, the Debtor's entire right, title and interest throughout the world in and to any common law rights in all copyrights owned by Debtor, and any and all income, royalties, damages and payments now or hereafter due and/or payable with respect

thereto including without limitation, damages and payments for past, present or future infringements, except that the estate retains all rights/proceeds from any infringement asserted by the estate against a third party prior to Closing to the extent these rights/proceeds are compensation for damages incurred by the estate prior to Closing.

b. **Domain Names**. Seller hereby sells, transfers, and conveys to Buyer, the Debtor's entire right, title and interest throughout the world in and to the domain names set forth in Exhibit A (the "**Domain Names**"), including without limitation, all registrations therefor, together with any known passwords and all of the goodwill of the Debtor's business symbolized by or associated with the Domain Names, and any and all income, royalties, damages and payments now or hereafter due and/or payable with respect thereto including without limitation, damages and payments for past, present or future infringements, except that the estate retains all rights/proceeds from any infringement asserted by the estate against a third party prior to Closing to the extent these rights/proceeds are compensation for damages incurred by the estate prior to Closing.

c. **Social Media Accounts**. To the extent transferrable by the relevant social media provider, Seller hereby sells, transfers and conveys to Buyer, the Debtor's entire right, title and interest throughout the world in and to its social media accounts on Facebook, Twitter, Instagram, Pinterest, Foursquare, Yelp, Sprout Social, Google Business, Momentfeed, Youtube, and Club Veg Gmail Account (Fishbowl Sender), including any known passwords, content, users/followers, and any and all income, royalties, damages and payments now or hereafter due and/or payable with respect thereto including without limitation, damages and payments for past, present or future infringements, except that the estate retains all rights/proceeds from any infringement asserted by the estate against a third party prior to Closing to the extent these rights/proceeds are compensation for damages incurred by the estate prior to Closing.

d. **Trade Secrets**. Seller hereby sells, transfers, and conveys to Buyer, the Debtor's entire right, title and interest throughout the world in and to its trade secrets, including without limitation, any known recipes, formulae and proprietary data, techniques, marketing materials and research and development data, and any now existing customer lists, and any and all income, royalties, damages and payments now or hereafter due and/or payable with respect thereto including without limitation, damages and payments for past, present or future infringements, except that the estate retains all rights/proceeds from any infringement asserted by the estate against a third party prior to Closing to the extent these rights/proceeds are compensation for damages incurred by the estate prior to Closing.

e. All rights under that certain Brand & Products License Agreement with Gold Coast Packing, Inc., together with all proceeds in connection thereto prorated from and after Closing.

Section 1.02 Excluded Assets. The assets of Debtor to be sold and assigned under this Agreement shall include only those items specifically set forth above and in Exhibit A hereto, and by way of clarification but not limitation, shall not include the following assets of Debtor (the "**Excluded Assets**"):

a. any cash on hand or in banks, including but not limited to any funds received or due (to be pro-rated as of the Closing Date) on account of that certain Brand & Products License Agreement with Gold Coast Packing, Inc. prior to the Closing Date;
b. any accounts receivable, including vendor refunds, tax refunds, deposits and/or rebates;
c. any litigation rights or recoveries and proceeds from any infringement asserted by the estate against a third party prior to Closing to the extent these rights/proceeds are compensation for damages incurred by the estate prior to Closing; other than these excluded litigation rights or recoveries, Buyer shall be assigned any rights to sue for past or future intellectual property infringement related to the Assets and shall be entitled to any recoveries or proceeds arising therefrom;
d. any personal property wherever located, except marketing materials in Seller's possession, if any;
e. any financial or tax records of Debtor; and
f. the GARDEN FRESH trademarks and related domain names as set forth in Exhibit B hereto, which were previously sold to Sahara Capital Partners, LLC.

Section 1.03 No Assumption of Liabilities. Except with respect to ongoing preservation of the Assets, Buyer is not assuming any liability, debt, assumption cure amounts, if any, or obligation of Debtor, or its bankruptcy estate, including any taxes attributable to the Assets prior to Closing and taxes or fees of Seller from the sale, if any, and Buyer shall have no obligation or responsibility therefor.

Section 1.04 Sale Free and Clear of Liens. All of the Assets being sold hereunder shall be sold and assigned by Seller to Buyer free and clear of all liens and interests in accordance with 11 U.S.C. Section 363(f), with any such liens and interests to attach to the sales proceeds paid to Seller in the order of their validity, priority, enforceability, and amount.

ARTICLE II.

CONSIDERATION

Section 2.01 Purchase Price. Buyer shall purchase the Assets defined in Section 1.01 above and Exhibit A hereto, and, in full consideration therefor, shall pay to Seller the sum of Five Hundred Thousand and 00/100ths Dollars ($500,000.00) (the "**Purchase Price**").

Section 2.02 Deposit. A nonrefundable deposit by wire transfer in the amount of One Hundred Thousand and no 00/100th Dollars ($100,000.00) (the "**Deposit**"), payable to Estate of Garden Fresh Restaurants LLC, Leslie T. Gladstone, Trustee, shall be delivered by Buyer to the Seller together with this signed Asset Purchase Agreement on or before October 20, 2020.



Signed by Judge Louise DeCarl Adler November 19, 2020

Section 2.03 Payment of the Consideration. At the Closing, Buyer shall pay to Seller, by wire transfer of immediately available funds into an account designated by the Seller, the amount of the Purchase Price less the Deposit actually received by Seller.

## ARTICLE III.
## SALE SUBJECT TO OVERBID

Section 3.01 Sale Subject to Overbid. Buyer and Seller acknowledge that the sale of the Assets is subject to overbid and that the Bankruptcy Court will be the ultimate decision maker as to the terms of any overbid and whether the sale is permitted to go forward. Seller has proposed and the Court has preliminarily approved an initial overbid amount of $550,000.00 and incremental overbids thereafter of a minimum of $10,000.00. Other required terms for any overbid shall be as provided by the Court.

Section 3.02 Break-Up Fee. Buyer and Seller acknowledge that the Bankruptcy Court will be the ultimate decision maker as to whether a break-up fee is permitted, in the event there is an overbid for the Assets and neither Buyer nor Buyer's affiliate or designee is the successful purchaser. If Buyer is not the successful purchaser, Buyer is not then in material default of any provision of this Agreement. Seller has proposed a maximum break-up fee of up to $15,000.00, based on actual expenses incurred including all out-of-pocket costs incurred and attorney's fees and expenses of Buyer's attorneys and other professionals and advisors in connection with this Agreement. The break-up fee shall be designated and held separately in Seller's trust account from the sale to the successful overbidder. Buyer shall be required to file a motion with the Court to approve any applicable break-up fees. Payment of the break-up fees shall be made directly from Seller's trust account by wire transfer of immediately available funds into an account designated by the Buyer from the proceeds from the sale to a third party with such payment made as soon as practicable upon Closing. Seller has proposed that the break-up fee shall be allowed as an administrative expense pursuant to 11 U.S.C. §503(b)(1)(A) and entitled to priority under § 507(a)(1).

## ARTICLE IV.
## WAIVER OF CONTINGENCIES, CLOSING, AND TERMINATION

Section 4.01 Waiver of Contingencies. Buyer's due diligence must be completed before signing this Agreement to purchase the Purchased Assets. All Buyer contingencies are hereby waived.

Section 4.02 Closing Date. This sale shall close on or before fifteen (15) business days following the date on which an order is entered in the Bankruptcy Case approving this Agreement and authorizing the Trustee to consummate this sale, without a stay of such order being entered. Notwithstanding the foregoing, in the event there is an appeal of the order approving the sale filed and there was no finding by the Bankruptcy Court that the Assets are being purchased in good faith, then notwithstanding that no stay of such order may have been entered, Seller shall not be obligated to close the sale until such time as the appeal has been resolved. The date on which this sale closes shall be the "**Closing**" or the "**Closing Date**." The Closing shall occur at the offices of Financial Law Group, 401 Via Del Norte, La Jolla, California, or such other place as may be mutually agreed upon by the Parties.

Section 4.03 Closing Deliveries by Sellers. At the Closing, Seller shall deliver to Buyer a bill of sale for all Assets being sold hereunder, any conveyance documents reasonably requested by Buyer to be executed by the Seller and such assumption and assignment agreements as may reasonably be required for purposes of effectuating any sale of the Assets. Seller shall also deliver to Buyer at the Closing copies or originals of all documentation in her possession relating to the Assets, such as any correspondence and/or agreements with third parties relating to the Assets, any marketing materials relating to the Assets, and documents embodying trade secrets relating to the Assets, and (to the extent they are in the possession of Seller) documents sufficient to show the identity of the component suppliers, manufacturers, distributors, and customers of the Assets, subject to any applicable privileges or privacy issues which would prevent such disclosure. Seller agrees to promptly execute and deliver to Buyer any documents reasonably requested by the Buyer in order for Buyer to secure protection of the intellectual property rights defined herein including any consent or other action by any person as a result of the execution, delivery and performance of this Agreement unless such documents can be assumed and assigned without such consent under the Bankruptcy Code. Seller shall provide a certified copy of the Sale Order prior to Closing.

Section 4.04 Closing Deliveries by Buyer. At the Closing, Buyer shall deliver to Seller the Purchase Price as required under Section 2.03 above, plus Buyer's share of any expenses and prorations as described in this Agreement.

Section 4.05 Prorations. There shall be prorated between Seller and Buyer as of the Closing Date any personal property taxes for the current year against the assets being sold herein, any pre-paid deposits, any funds owed pursuant to the Brand and Products License Agreement with Gold Coast Packing, Inc., and any other expenses usually pro-rated. Any sales tax payable as a result of this sale shall be paid by Seller. The provisions of this Section 4.05 shall survive the Closing.

Section 4.06 Bankruptcy Court Approval. Buyer acknowledges and understands that the Assets are property of the bankruptcy estate and, therefore, Seller has authority to execute the Agreement and sell the Assets only pursuant to Bankruptcy Court approval. Seller shall forthwith seek Bankruptcy Court approval of this Agreement pursuant to applicable Bankruptcy Court rules.

Section 4.07 Termination of Agreement. This Agreement may be terminated by (i) mutual written consent of Buyer and Seller; (ii) Seller or the Buyer, in the event of material breach by the other that has not been cured within ten (10) business days of receipt of written notice thereof or not waived by the non-breaching party; or (iii) Seller or Buyer if there is any law, regulation or court order that makes consummation of the transactions illegal or otherwise prohibited.

Section 4.08 Procedure Upon Termination. In the event of termination pursuant to Section 4.07 above, written notice thereof shall forthwith be given to the other Party pursuant to Section 6.04 below, and this Agreement shall terminate without further action by Buyer or Seller. If this Agreement is terminated as provided herein, each Party shall redeliver all documents, work papers and other material of any other Party relating to the transactions



Signed by Judge Louise DeCarl Adler November 19, 2020

contemplated hereby, whether so obtained before or after the execution hereof, to the Party furnishing the same. In addition, within ten (10) days after the termination of the Agreement, the Deposit shall be refunded to Buyer; provided, however, that in the event that Section 6.01 of this Agreement (Liquidated Damages) applies, the Deposit shall not be paid to Buyer. Also and alternatively, Seller shall have the option, but not the requirement, to bring an action for specific performance and thereby require Buyer's full performance.

Section 4.09 Effect of Termination. In the event that this Agreement is validly terminated as provided herein, then each of the Parties shall be relieved of its duties and obligations arising under this Agreement after the date of such termination and such termination shall be without liability to Buyer or Seller; provided, however, that the obligations of the Parties set forth in Section 4.08 and ARTICLE VI hereof shall survive any such termination and shall be enforceable hereunder.

## ARTICLE V.
## REPRESENTATIONS

Section 5.01 As Is, Where Is.

(a) IT IS UNDERSTOOD AND AGREED THAT, UNLESS EXPRESSLY STATED HEREIN, SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE ASSETS, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES OR REPRESENTATIONS AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(b) BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE ASSETS **"AS IS, WHERE IS, WITH ALL FAULTS."** BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATION OR INFORMATION PERTAINING TO THE ASSETS OR RELATING THERETO MADE OR FURNISHED BY SELLER OR ITS REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN. BUYER ALSO ACKNOWLEDGES THAT THE PURCHASE PRICE REFLECTS AND TAKES INTO ACCOUNT THAT THE ASSETS ARE BEING SOLD "AS IS, WHERE IS, WITH ALL FAULTS."

(c) BUYER ACKNOWLEDGES TO SELLER THAT BUYER HAD AN OPPORTUNITY PRIOR TO EXECUTING THIS AGREEMENT TO CONDUCT SUCH INSPECTIONS AND INVESTIGATIONS OF THE ASSETS AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE ASSETS AND ITS ACQUISITION THEREOF. BUYER HEREBY ASSUMES THE RISK THAT ADVERSE MATTERS INCLUDING, BUT NOT LIMITED TO, LATENT OR PATENT DEFECTS, ADVERSE PHYSICAL OR OTHER ADVERSE MATTERS, MAY NOT HAVE BEEN REVEALED BY BUYER'S REVIEW AND INSPECTIONS AND INVESTIGATIONS.



Signed by Judge Louise DeCarl Adler November 19, 2020

Section 5.02 Buyer's Representation. Buyer hereby represents that Buyer has the power, authority, and ability to carry out the obligations assumed and promised hereunder. Without limiting the foregoing, Buyer specifically represents that Buyer has sufficient liquid funds to consummate the purchase of the Assets and to perform Buyer's obligations under this Agreement.

ARTICLE VI.

FURTHER AGREEMENTS

Section 6.01 **Liquidated Damages. If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the Initial Deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish an amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. In addition, if Buyer fails to complete this purchase because of Buyer's default, Seller shall have the option, but not the requirement, to bring an action for specific performance and thereby require performance in full of this Agreement. To avoid any ambiguity, Buyer is not in default if Buyer is not the successful bidder following the auction.**

Buyer's Initials: NL Seller's Initials: [signature]

Section 6.02 Applicable Law. This Agreement shall be governed by and construed in accordance with the laws of the United States, including the United States Bankruptcy Code and Federal Rules of Bankruptcy Procedure, and the laws of the State of California, as applicable.

Section 6.03 Consent to Jurisdiction. The Parties hereto agree that all actions or proceedings arising in connection with this Agreement shall be tried and litigated exclusively in the United States Bankruptcy Court, Southern District of California, and the Federal Courts located in the County of San Diego, State of California. The aforementioned choice of venue is intended by the Parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the Parties with respect to or arising out of this Agreement in any jurisdiction other than that specified in this Section. Each Party hereby waives any right it may have to assert the doctrine of *forum non conveniens* or similar doctrine or to object to venue with respect to any proceeding brought in accordance with this Section, and stipulates that the United States Bankruptcy Court, Southern District of California, and the Federal Courts located in the County of San Diego, State of California shall have *in personam* jurisdiction and venue over each of them for the purpose of litigating any dispute, controversy, or proceeding arising out of or related to this Agreement.

Section 6.04 Notices. All notices, consents, waivers, and communications hereunder given by any Party to the other shall be in writing (including facsimile transmission and electronic mail) and delivered personally, by facsimile, by electronic mail, by a recognized overnight courier, or by dispatching the same by certified or registered mail, return receipt requested, with postage prepaid, in each case addressed:

If to Buyer to: ______________________________



Signed by Judge Louise DeCarl Adler November 19, 2020

Francis Chow
444 W New England Ave., Ste. 117
Winter Park, FL 32789
Email: fchow@punchcardcapital.com

If to Seller to: Leslie T. Gladstone, Chapter 7 Trustee
401 Via Del Norte
La Jolla, CA 92037
E-mail: Leslieg@flgsd.com

or such other address or addresses as Buyer or Seller may from time to time designate by notice as provided herein, except that notices of changes of address shall be effective only upon receipt.

Section 6.05 Severability. If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any matter materially adverse to any Party. Upon such determination that any term or provision is invalid, illegal, or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as close as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the fullest extent possible.

Section 6.06 Entire Agreement. This Agreement constitutes the entire agreement between the Parties and supersedes all prior understandings, agreements, or undertakings of the Parties with respect to the subject matter herein. This Agreement may be amended only by a written instrument executed by all the Parties. All schedules, attachments or exhibits attached hereto and referenced herein are hereby incorporated by reference and made part of this Agreement for all purposes as if fully set forth herein.

Section 6.07 Counterparts. This Agreement shall be binding upon, and inure to, the benefit of the Parties hereto and their respective heirs, successors, and assigns. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which shall constitute together but one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf), or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

IN WITNESS WHEREOF, the Parties have caused this Asset Purchase Agreement to be duly executed, effective as of the date first written above.



Signed by Judge Louise DeCarl Adler November 19, 2020

**BUYER**

Name: Norbert Lou
Title: Managing Member
Company: Punch Card Capital LLC, manager

**SELLER**

Leslie T. Gladstone, Trustee
Estate of Garden Fresh Restaurants LLC,
Case No. 20-02477-LA7



Signed by Judge Louise DeCarl Adler November 19, 2020

# EXHIBIT A

Included Assets – Registered Trademarks and Domain Names

A. Trademarks:

1.

| Mark | Image | Status | Reg. Number | Goods and Services | Owner |
|---|---|---|---|---|---|
| SOUPLANTATION | | Renewed (Registered)<br>**Reg Date:** 8-MAY-2001 | **Reg** 2449944 | **INT. CL. 42** CARRY OUT SERVICES | GARDEN FRESH RESTAURANTS LLC<br>DELAWARE LIMITED LIABILITY COMPANY<br>15822 BERNARDO CENTER DRIVE, SUITE A<br>SAN DIEGO, CALIFORNIA, 92127 (hereafter, "GARDEN FRESH RESTAURANTS LLC") |
| SOUPLANTATION | | Renewed (Registered)<br>**Reg Date:** 18-FEB-1986 | **Reg** 1383741 | **INT. CL. 42** RESTAURANT AND CATERING SERVICES | GARDEN FRESH RESTAURANTS LLC |
| FARM-TO-TABLE-TO-FARM | | Registered<br>**Reg Date:** 11-APR-2017 | **Reg** 5183673 | **INT. CL. 43** RESTAURANT SERVICES, EXCLUDING MOBILE RESTAURANT SERVICES | GARDEN FRESH RESTAURANTS LLC |
| SWEET TOMATOES | | Renewed (Registered)<br>**Reg Date:** 9-JUL-2002 | **Reg** 2592113 | **INT. CL. 42** CARRY OUT RESTAURANT SERVICES | GARDEN FRESH RESTAURANTS LLC |
| SWEET TOMATOES | Sweet Tomatoes | Renewed (Registered)<br>**Reg Date:** 22-AUG-1995 | **Reg** 1913980 | **INT. CL. 42** RESTAURANT AND CATERING SERVICES | GARDEN FRESH RESTAURANTS LLC |
| SWEET TOMATOES | | Renewed (Registered)<br>**Reg Date:** 29-OCT-1991 | **Reg** 1663057 | **INT. CL. 42** RESTAURANT AND CATERING SERVICES | GARDEN FRESH RESTAURANTS LLC |



Signed by Judge Louise DeCarl Adler November 19, 2020

| Mark | Image | Status | Reg. Number | Goods and Services | Owner |
|---|---|---|---|---|---|
| SWEET TOMATOES | | Renewed (Registered) (AZ) | **Reg** 130540 | Restaurant | GARDEN FRESH RESTAURANT CORP.<br><br>CORPORATION<br><br>15822 BERNARDO CENTER DRIVE, SUITE A<br><br>SAN DIEGO CALIFORNIA 92127<br><br>Tel.: 858-312-1955<br><br>**Renewed:** 07-APR-2014 |
| SWEET TOMATOES | | REGISTERED | **Reg** 5725872 | **43** レストランにおける飲食物の提供・ケータリング及び持ち帰り可能なレストランにおける飲食物の提供<br><br>**Goods and Services Computerised Translation:**<br><br>**43** Providing food and drink at restaurant · Providing food and drink at catering and take-away restaurants | GARDEN FRESH RESTAURANTS LLC |
| SWEET TOMATOES | | REGISTERED | **Reg** 220914 | 43 والمشـــروبات؛ المـــأكولات دیتـور ی الـذات الخدمـة مطاعم المطـاعم؛<br><br>Goods and Services Computerised Translation:<br><br>43 Supply of food and beverages; restaurants; self-service restaurants | رســـتورانت ش‌یفـر غاردن<br><br>15822 مســـتر برنـــاردو ســان ،هی جـاح ،فـیـدرا غوریـید<br><br>UNITED STATES OF AMERICA |
| WONTON HAPPINESS | | Registered<br><br>**Reg Date:** 28-FEB-2017 | **Reg** 5150354 | **INT. CL. 29** TOSSED GARDEN SALAD FOR RETAIL SALE, CATERING OR FOR ON-SITE CONSUMPTION | GARDEN FRESH RESTAURANTS LLC |
| DESIGN YOUR OWN DELICIOUS | | Registered<br><br>**Reg Date:** 05-MAY-2015 | **Reg** 4730453 | **INT. CL. 43** RESTAURANT, CATERING AND TAKE-OUT SERVICES | GARDEN FRESH RESTAURANTS LLC |
| ALBONDIGAS LOCAS SOUP | | Registered<br><br>**Reg Date:** 25-May-2010 | **Reg** 3792257 | **INT. CL. 29** SOUP | GARDEN FRESH RESTAURANTS LLC |

| Mark | Image | Status | Reg. Number | Goods and Services | Owner |
|---|---|---|---|---|---|
| JOAN'S BROCCOLI MADNESS | | Renewed (Registered)<br>**Reg Date:** 25-MAY-2010 | **Reg** 3792258 | **INT. CL. 29** VEGETABLE SALAD | GARDEN FRESH RESTAURANTS LLC |
| *Design Only* | | Renewed (Registered)<br>**Reg Date:** 6-JUN-2006 | **Reg** 3100808 | **INT. CL. 43** RESTAURANT AND CARRY OUT SERVICES | GARDEN FRESH RESTAURANTS LLC |
| *Design Only* | | Renewed (Registered)<br>**Reg Date:** 13-JUN-2006 | **Reg** 3103947 | **INT. CL. 43** RESTAURANT AND CARRY OUT SERVICES | GARDEN FRESH RESTAURANTS LLC |
| CLUB VEG | | Renewed (Registered)<br>**Reg Date:** 17-AUG-2004 | **Reg** 2874348 | **INT. CL. 38** ELECTRONIC MAIL SERVICES, NAMELY PROVIDING E-MAIL ALERTS REGARDING MENU ITEMS AND SERVICES OFFERED AT RESTAURANTS | GARDEN FRESH RESTAURANTS LLC |
| LOTS TO FEEL GOOD ABOUT | | Renewed (Registered)<br>**Reg Date:** 23-OCT-2001 | **Reg** 2500463 | **INT. CL. 42** RESTAURANT, CATERING AND CARRY OUT SERVICES | GARDEN FRESH RESTAURANTS LLC |

B. Domain Names:

1. albondigaslocassoup.xxx-block
2. behindthefood.xxx-block
3. clubveg.com
4. clubveg.xxx-block
5. clubvegemail.com
6. fieldkitchen.com
7. ihatesouplantation.com
8. ihatesoupplantation.com
9. ihatesweetomatoes.com
10. ihatesweettomatoes.com
11. joansbroccolimadness.xxx-block
12. kitchencabinet.xxx-block
13. lbveg.co
14. lotstofeelgoodabout.xxx-block



Signed by Judge Louise DeCarl Adler November 19, 2020

15. mydelicious.com
16. souplantation.com
17. souplantation.kitchen
18. souplantation.menu
19. souplantation.recipes
20. souplantation.xxx-block
21. souplantationcatering.com
22. souplantationcoupons.com
23. souplantationexpress.com
24. souplantationonlinecommunity.com
25. souplantationsucks.com
26. soupplantation.com
27. soupplantationexpress.com
28. soupplantationsucks.com
29. sweet-tomatoes.kitchen
30. sweet-tomatoes.menu
31. sweet-tomatoes.recipes
32. sweetomatoes.com
33. sweetomatoescatering.com
34. sweetomatoesexpress.com
35. sweetomatoessucks.com
36. sweettomatoes.com
37. sweettomatoes.kitchen
38. sweettomatoes.menu
39. sweettomatoes.recipes
40. sweettomatoes.xxx-block
41. sweettomatoesandsouplantationonlinecommunity.com
42. sweettomatoescatering.com
43. sweettomatoesexpress.com
44. sweettomatoesonlinecommunity.com
45. sweettomatoessucks.com; and
46. wontonchickenhappiness.xxx-block



Signed by Judge Louise DeCarl Adler November 19, 2020

# EXHIBIT B

Excluded Assets - Trademark Assets Purchased By Third Party Sahara Capital Partners, LLC

## Garden Fresh Trademarks

| Mark | Image | Status | Reg. / App. Number | Goods and Services | Owner |
|---|---|---|---|---|---|
| GARDEN FRESH REWARDS | | Allowed | App 88223661 | INT. CL. 35 CUSTOMER LOYALTY AND BENEFITS PROGRAM SERVICES FEATURING DISCOUNTS, REBATES, INCENTIVES, AND OTHER BENEFITS FOR ADVERTISING AND PROMOTIONAL PURPOSES | GARDEN FRESH RESTAURANTS LLC DELAWARE LIMITED LIABILITY CO. 15822 BERNARDO CENTER DRIVE, SUITE C SAN DIEGO, CALIFORNIA, 92127 (hereafter, "GARDEN FRESH RESTAURANTS LLC") |
| GARDEN FRESH REWARDS | GARDEN FRESH REWARDS | Allowed | App 88223663 | INT. CL. 35 CUSTOMER LOYALTY AND BENEFITS PROGRAM SERVICES FEATURING DISCOUNTS, REBATES, INCENTIVES, AND OTHER BENEFITS FOR ADVERTISING AND PROMOTIONAL PURPOSES | GARDEN FRESH RESTAURANTS LLC |
| GARDEN FRESH | | Renewed (Registered) **Reg Date:** 13-JUL-2004 | Reg 2862656 | INT. CL. 43 RESTAURANT, CARRY OUT AND CATERING SERVICES | GARDEN FRESH RESTAURANTS LLC |

## Garden Fresh Domain Names

| | |
|---|---|
| 1. | gardenfresh.net |
| 2. | gardenfresh.xxx-block |
| 3. | gardenfreshcorp.com |
| 4. | gardenfreshcorp.net |
| 5. | gardenfreshllc.com |
| 6. | gardenfreshness.com |
| 7. | gardenfreshrest.com |



Signed by Judge Louise DeCarl Adler November 19, 2020

| | |
|---|---|
| 8. | gardenfreshrestaurantcorp.com |
| 9. | gardenfreshrestaurantcorp.xxx-block |
| 10. | gardenfreshrestaurants.com |
| 11. | gardenfreshrewards.com |
| 12. | gardenfreshsucks.com |
| 13. | gf-fresh.com |
| 14. | gf-rest.com |
| 15. | gffresh.com |
| 16. | gfr-fresh.com |
| 17. | gfr-rest.com |
| 18. | gfrcorp.com |
| 19. | gfrest.com |
| 20. | gfrsettlement.com |
| 21. | ihategardenfresh.com |
| 22. | mygardenfresh.com |
| 23. | mygardenfresh.com |



Signed by Judge Louise DeCarl Adler November 19, 2020